372 So.2d 1081 (1979)
DIXIE NATIONAL LIFE INSURANCE COMPANY
v.
Charles E. ALLISON.
No. 51246.
Supreme Court of Mississippi.
June 27, 1979.
*1082 Perry, Crockett, Morrison & Starling, Robert L. McArty, Lester F. Smith, Jackson, for appellant.
R.S. Hardin, Ripley, for appellee.
Before SMITH, P.J., and SUGG and COFER, JJ.
SUGG, Justice, for the Court:
Charles Allison filed a bill for specific performance in the Chancery Court of Tippah County against Dixie National Life Insurance Company to recover medical expenses incurred by his wife in the Methodist Hospital in Memphis, Tennessee from July 22, until September 2, 1977. Dixie National denied liability on the ground that Mrs. Allison's illness was not diagnosed as cancer upon the basis of a microscopic examination of fixed tissue as required by the terms of the policy. The chancellor ordered Dixie National to pay medical expenses under the cancer policy for the July  September hospitalization of Mrs. Allison, but did not determine the amount that Dixie National should pay.
Mrs. Allison was also a patient in the Methodist Hospital from December 14 to December 24, 1977 and from December 27, 1977 to February 22, 1978. A biopsy was *1083 performed on Mrs. Allison on December 16, 1977. After receiving the pathology report based on the December 16 biopsy, which diagnosed Mrs. Allison's disease as cancer, together with proof of loss on March 8, 1978, Dixie National determined that the claim was valid so payment under the terms of the policy began and has continued to date of trial. The first payment was made on March 10 for Mrs. Allison's hospital confinement from December 14 to December 24, 1977 which included payment for radiation treatment going back 45 days from December 16, 1977.
The policy provides that payment for loss resulting from definite cancer treatment will be made following a positive diagnosis of cancer by a legally licensed doctor of medicine certified by the American Board of Pathology to practice pathologic anatomy, and for a period of 45 days preceding the date on which a positive diagnosis is made. The pertinent parts of the policy follow:
DIXIE NATIONAL LIFE INSURANCE CO. An Old Line Legal Reserve Stock Company HOME OFFICE . JACKSON, MISSISSIPPI HEREBY INSURES
The Insured as defined under the provisions of this policy, to the extent herein provided, against loss resulting from hospital confinement and other specified expenses in accordance with the provisions, conditions, and limitations stated in this policy, incurred for the definitive treatment of the disease "cancer", only, hereinafter called "such sickness", providing such cancer is positively diagnosed in accord with the standard hereinafter set forth and as cancer is hereinafter defined.
PART 1 BENEFITS FOR SUCH SICKNESS
If any Insured shall become afflicted with cancer, which is first diagnosed, as herein defined, in the entire lifetime of the Insured following the date of issue shown herein and while this policy is in force and such sickness is diagnosed as provided herein, the Company will pay indemnities according to the Schedule of Benefits, for the expenses incurred by the Insured, except as otherwise provided herein, within the period of time beginning not more than 45 days preceding the date on which positive diagnosis as herein defined is made for cancer or malignant tumor(s) originating in a given organ or body system, ...
PART 2 CANCER DEFINED - POSITIVE PATHOLOGY REQUIRED
A. Cancer is defined as a malignant neoplasm; that is, a new growth that has the ability to invade and/or metastasize. This includes leukemia, gliomas, and malignant bronchial adenomas. It does not include polyps of colon and carcinoids of the appendix. Such cancer as defined herein must be positively so diagnosed by a legally licensed doctor of medicine certified by the American Board of Pathology to practice Pathologic Anatomy, upon the basis of a microscopic examination of fixed tissue, or preparations from the hemic system (either during life or post-mortem). The pathologist establishing the diagnosis shall base his judgment solely on the criteria of malignancy as accepted by the American Board of Pathology after a study of histocytologic architecture or pattern of the suspect tumor, tissue or specimen.
... .

EXCEPTIONS AND LIMITATIONS
C. This policy pays only for loss resulting from definitive cancer treatment, including only direct extension, metastatic spread (and/or its direct effects) or recurrence: ...
*1084 A biopsy was not performed on Mrs. Allison during her first confinement in the Memphis hospital. Absent the biopsy, it was impossible to secure a pathological report diagnosing Mrs. Allison's disease as cancer during her first hospital confinement; however, the proof for the complainant shows that it would have endangered the life of Mrs. Allison to secure a biopsy at the time of her first hospital confinement.
Mrs. Allison was admitted to the hospital on July 22, 1977 and her physician was Thomas G. Dorrity, M.D., who is Chief of Surgery for the Methodist Hospital. On July 22, Dr. Dorrity made a diagnosis of "a mass in the pelvis, probably carcinoma of the sigmoid." An exploratory laparotomy was performed by Dr. Dorrity on July 28, his diagnosis was verified clinically, a sigmoid colostomy was performed because Mrs. Allison was almost completely obstructed, and relief from this condition was imperative.
Dr. Dorrity explained that a sigmoid colostomy is a procedure where a loop of the big colon in the sigmoid area is brought to the outside and opened so that the bowels can move and expel gas to relieve the obstruction. His diagnosis was cancer of the sigmoid colon, specifically rectosigmoid.
Dr. Dorrity did not order any pathological workup on the patient because the prime purpose of the operation was to relieve her obstruction. He stated when a surgeon is in the peritoneal cavity and verifies a mass that he recognizes as cancer, it would be poor surgical judgment to take a piece of that for microscopic examination because of the possibility of leaking intestinal contents which might cause peritonitis and the death of the patient. He stated, "That's not good surgery to open the gut when you're on the inside unless you absolutely have to." Dr. Dorrity stated it was impossible to obtain a biopsy in the usual way of slipping a scope up the rectum. He attempted this procedure before surgery, but due to the mass and inflammation of the gut and tissue, and the fact that the patient had an operation some years before for endometriosis, the gut was in such loops that it could not be straightened out to accommodate the scope.
Following the sigmoid colostomy the endema subsided enough so that the scope could be passed from below and a piece of tissue obtained. On December 16, 1977, this procedure was followed and a biopsy was obtained. The pathological workup on the tissue obtained by this biopsy confirmed his diagnosis made in July, 1977.
Complainant did not furnish proof of positive pathology required by the terms of the policy, but we are of the opinion that because of the danger to the life of the patient, failure to obtain a biopsy during the July, 1977 hospitalization was excusable. The proof is uncontradicted that the clinical diagnosis of cancer made by Dr. Dorrity in July, 1977 was confirmed by the pathological report of December 16, 1977. Under the facts of this case, we hold that complainant was excused from furnishing the pathology report required by the terms of the policy because of the risk involved to the patient, a condition which was not under the control of the insured.
This rule must be applied cautiously, and failure to furnish reports required by an insurance policy may be excused only under facts clearly showing such excuse is justifiable and did not arise because of the negligence of the insured.
Dixie National also argues that its motion for change of venue should have been sustained because it is a domestic company with its principal place of business in the First Judicial District of Hinds County. Section 11-11-7 Mississippi Code Annotated (1972) authorizes a suit against an insurance company either in the county where the loss occurred or in the county where the insurer has its principal place of business. The question in this case is, where did the loss occur?
Mrs. Allison lived in Tippah County when she became ill, and absent any proof to the contrary, this gives rise to the inference that the disease of cancer was contracted by Mrs. Allison in the county of her residence. In our view this was the place where the loss occurred although the expenses for *1085 treatment of cancer were incurred in Memphis, Tennessee.
As we view it, the place where the loss occurs with a disease is analogous to an injury received by a person in an automobile accident in county A but received treatment in county B. There is no doubt that the loss in such case occurred in county A, although the expense for treatment was incurred in county B. Since Mrs. Allison lived in Tippah County when she contracted cancer, we are of the opinion that complainant could have filed suit in either Tippah County where the loss occurred, or in Hinds County, the principal place of business of Dixie National.
Having disposed of the principal issues in this case, we next consider the decree rendered by the chancellor. The decree holds Dixie National liable for the hospital expenses incurred from July 22, 1977, through September 2, 1977; however, there was no determination of the amount due complainant under the terms of the policy. In Norris v. Norris, 157 Miss. 457, 128 So. 342 (1930), we held:
"A decree in chancery must be characterized by a reasonable certainty in its terms, and this is particularly true in respect to those provisions which fix the rights and liabilities of the respective parties to the cause." (157 Miss. at 459, 128 So. at 342).
The decree does not meet this test because the amount due complainant was not specified. If an execution were levied on this decree, what amount would it be for? It is necessary that this case be remanded to determine the amount due.
We note further that this action was predicated on the theory of specific performance. Actually, it was nothing more than a suit for breach of contract and should have been brought in the Circuit Court of Tippah County, pursuant to section 9-7-81 Mississippi Code Annotated (1972). Therefore, we remand this case to the Circuit Court of Tippah County under the authority of Article 6, section 147, Mississippi Constitution of 1890 for a determination of the amount due under the policy.
AFFIRMED, AND REMANDED TO THE CIRCUIT COURT OF TIPPAH COUNTY.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.