# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-IA-01699-SCT

*JOHN W. STUBBS AND A. W. STUBBS*

*v.*

*MISSISSIPPI FARM BUREAU CASUALTY INSURANCE COMPANY a/k/a FARM BUREAU CASUALTY INSURANCE COMPANY, TRUSTMARK NATIONAL BANK, BILLY WELCH AND WELCH AUTO PLEX, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/30/1999 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | EDWIN Y. HANNAN |
| | MICHAEL S. ALLRED |
| | EUGENE COURSEY TULLOS |
| | JOHN RAYMOND TULLOS |
| ATTORNEYS FOR APPELLEES: | REBECCA SUZANNE BLUNDEN |
| | CHARLES G. COPELAND |
| | WILLIAM F. RAY |
| | EMERSON BARNEY ROBINSON, III. |
| | ROBERT A. MILLER |
| | GEORGE D. RUNNELS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED-06/20/2002 |
| MOTION FOR REHEARING FILED: | 7/23/2002; denied 9/12/2002 |
| MANDATE ISSUED: | 9/19/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case presents an interlocutory appeal from the Circuit Court of Simpson County, Mississippi, after venue was transferred to it from the Circuit Court of Smith County. We find that the Smith County Circuit Court abused its discretion in granting the motion for change of venue.

## FACTS

¶2. John W. Stubbs visited Welch Auto Plex, Inc., in Mendenhall, Simpson County, Mississippi, to discuss with Billy C. Welch the purchase of a 1995 Chevrolet Corvette. John asked Welch to obtain financing for the vehicle through Trustmark National Bank. Welch telephoned the Trustmark branch in Mendenhall, and Trustmark said that it would approve a loan to John if A. W. Stubbs, John's father, would co-sign the note. Trustmark would finance the purchase of the vehicle through a process known as "indirect financing."[1]

¶3. A. W. contacted the Mississippi Farm Bureau Casualty Insurance Company (Farm Bureau) in Raleigh, Smith County, Mississippi, to discuss possible insurance coverage of the vehicle. He gave the insurance agent a complete description of the vehicle, including its location. He informed Farm Bureau that he and John intended to purchase the vehicle and to insure the vehicle with Farm Bureau. A. W. had been an insurance customer of Farm Bureau for many years and, on the date of the purchase of the Corvette, had three other vehicles insured with Farm Bureau. A.W. had liability, but not collision or comprehensive, coverage on the other three vehicles. A. W.'s Farm Bureau insurance policy provided for automatic insurance for newly acquired automobiles as follows:

### IX. AUTOMATIC INSURANCE FOR NEWLY ACQUIRED AUTOMOBILE

1. Additional Automobile - If the named Insured or spouse acquires ownership of an additional private passenger automobile, pickup or van, insurance automatically applies to such additional vehicle for a period of the lesser of (a) 30 days beginning on the day the named Insured or spouse takes possession, or (b) the expiration of the policy. . . .

\* \* \*

3. The Following Provisions Apply to Both Additional Automobiles and Replacement Automobiles:

Any automatic insurance provided by Section IX is limited to the types of coverages, limits of coverages and terms of coverages applicable to the vehicle described in the Declarations . . . .

¶4. On a Saturday, John and A. W. drove to Mendenhall from their home in Simpson County, Mississippi, and finalized the purchase of the Corvette. Welch attempted to telephone the local agent for Farm Bureau in Raleigh, to no avail. Welch then faxed the purchase documents to Trustmark and/or Farm Bureau. Because Welch was unable to contact Farm Bureau, John asked Welch if they (the Stubbses) would be covered. According to the Stubbses, Welch replied, "You do not need to worry. You are covered by insurance." The Stubbses claim that Welch told them that they had full coverage with him until they contacted Farm Bureau. The Stubbses never purchased automobile insurance from Farm Bureau specifically for the Corvette. In his deposition, A. W. stated that he knew that his policies did not provide for collision or comprehensive coverage at the time the Corvette was purchased. As John was driving the Corvette back to Taylorsville, and after he had crossed the county line into Smith County, the Corvette was involved in a one-vehicle collision. John sustained injuries, and the Corvette was "totaled." He was hospitalized and incurred medical expenses in Simpson County.

¶5. John and A. W. are residents of Simpson County. The Farm Bureau's principal place of business is in Hinds County, but A. W. did business with the Farm Bureau's branch office in Smith County. Trustmark's principal place of business is in Hinds County, but its branch in Simpson County was the office involved in the financing of the Corvette. Welch resides in Simpson County. The Auto Plex's principal place of business is in Simpson County. The accident occurred in Smith County.

¶6. John and A. W. filed a complaint in the Circuit Court of Smith County against Welch, the Auto Plex, Trustmark and Farm Bureau, claiming that the defendants were liable for negligence, gross negligence, breach of contract, bad faith breach of contract, breach of covenants of good faith and fair dealing, bad faith, lender liability, breach of fiduciary duties, estoppel, extrinsic fraud and fraud by concealment.

¶7. With respect to the Farm Bureau, the Stubbses alleged it had actual knowledge that the purchase of the vehicle was being financed through Trustmark and that Trustmark required insurance on newly-purchased vehicles. Farm Bureau insured all of A. W.'s other vehicles. Under the policies previously issued to A. W., newly-acquired vehicles were automatically insured. The Stubbses averred that Farm Bureau's denial of collision and comprehensive coverage and medical payments coverage constituted bad faith, that it was estopped from denying coverage and that it negligently failed to insure the vehicle.

¶8. With respect to Trustmark, the Stubbses alleged it was estopped from denying insurance coverage because, under the terms of the retail installment contract, Trustmark had the right to insure the vehicle against collision and comprehensive loss upon notice that the vehicle was uninsured. Thus, the Stubbses charged that Trustmark negligently failed to obtain insurance on the vehicle and engaged in fraud and bad faith.

¶9. With respect to Welch, the Stubbses alleged that he promised them that the vehicle was insured at the time the vehicle was delivered to them and that they reasonably believed Welch's assurances. Therefore, they charged that Welch and "his" insurance carrier (Farm Bureau) were estopped from denying coverage. Furthermore, they asserted that Welch negligently failed to insure the vehicle and he and "his" insurance carrier engaged in conduct which was fraudulent and which constituted bad faith.

¶10. Each of the defendants challenged venue in their answers to the complaint.[2] Trustmark filed a separate motion to transfer venue, and Welch and the Auto Plex later joined in this motion.

¶11. At the hearing on the motion for change of venue, Trustmark argued: (1) its acceptance of the assignment of the loan paper from the car dealer occurred in Simpson County; (2) the allegations in the complaint did not pertain to any occurrence in Smith County because, even though A. W. did business with the Farm Bureau office in Smith County, the only Farm Bureau coverage on the Corvette under A. W.'s existing policies was liability; and because the accident was a one-vehicle accident, liability coverage was not applicable; therefore there was no coverage for the accident under A. W.'s Farm Bureau policies and no viable claim against the Farm Bureau; (3) the conversations that Welch had with various people, of which the Stubbses complain, occurred in Simpson County; (4) none of the complained-of actions by Trustmark, Welch, or the Auto Plex occurred in Smith County; (5) the insurance company venue statute did not apply because there was no insurance in effect which would cover a one-vehicle collision; and (6) *Blackledge v. Scott*, 530 So. 2d 1363 (Miss. 1988), held that the insurance company venue statute did not apply where there was no valid claim against an insurance company.

¶12. The Stubbses replied that they contacted Farm Bureau before and after they made the decision to

purchase the vehicle, Trustmark required them to sign a document guaranteeing that they had insurance; Welch was an agent of Trustmark, so Trustmark is liable for what Welch did; Welch performed all of the complained-of actions in Simpson County; the vehicle was wrecked in Smith County; *Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149 (Miss. 1992), holds that venue lies either where any substantial thing giving rise to the cause of action occurs or accrues; *Forman v. Mississippi Publishers Corp.*, 195 Miss. 90, 14 So. 2d 344 (1943), holds that "accrue" means the place where the last event necessarily brings the cause of action into being and gives the plaintiff standing occurs; the insurance venue statute states that venue is in any county in which a loss may occur; and *Dixie Nat'l Life Ins. Co. v. Allison*, 372 So. 2d 1081 (Miss. 1979), holds that the place where the loss occurred is where the claimant became ill or where the insurance company had its principal place of business.

¶13. The trial court ruled that the Stubbses made a good argument to keep venue in Smith County, but that the "safer course" would be to transfer it to Simpson County. The Stubbses have filed this interlocutory appeal, pursuant to our grant of permission. *See* M.R.A.P. 5.

## STANDARD OF REVIEW

¶14. The standard of review for a transfer of venue is abuse of discretion. *McCain Bldrs., Inc. v. Rescue Rooter, LLC*, 797 So. 2d 952, 954 (Miss. 2001); *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 180 (Miss. 1999). The trial judge's ruling will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances. *McCain Bldrs.,* 797 So. 2d at 954; *Beech v. Leaf River Forest Prods., Inc.*, 691 So. 2d 446, 448 (Miss. 1997).

## ANALYSIS

### I. WHETHER VENUE IS PROPER IN SMITH COUNTY PURSUANT TO MISS. CODE ANN. § 11-11-7.

¶15. Miss. Code Ann. § 11-11-7 (1972) provides that actions against insurance companies may be brought in any county in which a loss may occur. The Stubbses contend that since the vehicle was wrecked in Smith County, the loss occurred in Smith County, and venue is proper in Smith County. Furthermore, Farm Bureau admitted that John Stubb was an insured at the time of the accident. In cases involving multiple defendants, where venue is appropriate for one, it is appropriate for all. *Blackledge*, 530 So. 2d at 1365. Thus, if Farm Bureau is a proper defendant, and venue is proper as to it, then Smith County is a proper venue for all defendants.

¶16. The defendants contend that the Farm Bureau was "fraudulently joined," and that its "nominal presence" in the case bars the application of § 11-11-7. The insurance policy did not provide for any collision coverage for damage to the vehicle. It provided coverage for "additional" or "replacement" automobiles, but only to the extent that A. W.'s other three vehicles were insured. A. W. only had *liability* coverage, not *collision* or *comprehensive* coverage on the three vehicles listed in the Farm Bureau policy. A. W. testified that he *knew* that the policy he had with Farm Bureau was for liability only. Without a loss or a policy, § 11-11-7 cannot be used as the basis for selecting venue. To hold otherwise would be to ignore the intent of the statute. *Peterson v. Smith*, 188 Miss. 659, 196 So. 505, 506 (1940).

¶17. In determining if the Farm Bureau was fraudulently joined, we must consider:

> (1) Whether the action was initiated in good faith on the bona fide belief that the plaintiff has a cause of action against the defendant upon whom venue is based;
>
> (2) Whether the claim against the defendant upon whom venue is based is fraudulent, frivolous, or made with the intention of depriving the other defendants of their right to be sued in their own counties; and
>
> (3) Whether the claim of liability asserted against the defendant upon whom venue is based is reasonable.

*Blackledge*, 530 So. 2d at 1364. Where multiple defendants are involved, the venue-fixing defendant must be a material and proper party and not a defendant "joined for the sole purpose of giving the court of that county jurisdiction." *Trolio v. Nichols*, 160 Miss. 611, 133 So. 207, 208 (1931).

¶18. The Stubbses contend that the Farm Bureau committed bad faith by failing to cover the property damage claim. An insured seeking to recover on a claim of bad faith must first establish the existence of coverage on the underlying claim. *USF&G Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992) (applying Mississippi law). Since, as stated above, the Farm Bureau policies held by A. W. at the time did not include collision or comprehensive insurance, there can be no bad faith denial of the same.

¶19. Furthermore, under the automatic insurance clause, Farm Bureau had a legitimate and arguable reason to deny the Stubbses' claim for the damage to the vehicle because it is undisputed that there was no collision coverage available. Therefore, there is no claim for bad faith.

¶20. The Stubbses contend that they have medical payment claims against Farm Bureau and that these claims arose as the result of the accident in Smith County. They urge us to distinguish *Blackledge*, arguing that the law on fraudulent joinder does not apply to the instant case because *Blackledge* involved personal injuries resulting from a car accident rather than the claims of bad faith asserted by the Stubbses.

¶21. This distinction lacks merit. The test for fraudulent joinder is whether the venue-fixing defendant is a party against whom liability could exist. Therefore, the complained-of act of the defendant is not relevant when determining whether a defendant has been fraudulently joined.

¶22. Farm Bureau vehemently denies the Stubbses' allegations that medical payments under the existing policies were not made. It points to deposition testimony and letters sent by the Farm Bureau to John Stubbs and his attorneys which show that the medical payments were made and were properly handled. The Stubbses attempt to create an issue regarding the medical payments coverage by alleging that the payment was improper. However, they provide no descriptions of the alleged improprieties or legal support for their allegations.

¶23. We find that no Farm Bureau coverage existed covering the Stubbses' claims and that § 11-11-7 does not therefore apply to the facts at hand, and thus, Smith County is not a proper venue for the remaining defendants based on Farm Bureau's status.

## II. WHETHER VENUE IS PROPER IN SMITH COUNTY PURSUANT TO MISS. CODE ANN. § 11-11-7.

¶24. Miss. Code Ann. § 11-11-3 (Supp. 2001) provides in relevant part that a resident defendant may be

sued wherever that resident "may be found" or where the cause of action occurred or accrued. A resident defendant corporation may be sued where its principal place of business is located or where the cause of action occurred or accrued. Under § 11-11-3, therefore, Welch and the Auto Plex are subject to suit in Simpson County or where the action occurred or accrued, and Trustmark is subject to suit in Hinds County or where the action occurred or accrued.

¶25. Trustmark, Welch and the Auto Plex would therefore be subject to suit in Smith County only if the action occurred or accrued in Smith County. The Stubbses claim that the action occurred or accrued in Smith County because the loss (the wreck) occurred in Smith County.

¶26. Under *Flight Line*, while a court must begin with the well-pleaded allegations of the complaint, it may consider all other evidence in cognizable form in rendering a decision on venue. 608 So. 2d at 1155. It is the plaintiff's right to "select among the permissible venues,...unless in the end there is no credible evidence supporting the factual basis for the claim of venue." *Id*. (citing *Mississippi Power Co. v. Luter*, 336 So. 2d 753, 754 (Miss. 1976); *Great S. Box Co. of Miss. v. Barrett*, 231 Miss. 101, 109-110, 94 So. 2d 912, 914-15 (1957)). In *Flight Line*, this Court discussed the meaning of the "occur or accrue" language in § 11-11-3.

> "[O]ccur" and "accrue" are not synonymous, legally or otherwise, as the disjunctive connector forthrightly suggests. We read accrual in its formalistic sense. A cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. *Forman v. Mississippi Publishers Corp.*, 195 Miss. 90, 104, 14 So.2d 344, 346 (1943). This may well mean the moment injury is inflicted, that point in space and time when the last legally significant fact is found. "Occur" is a less formalistic term. It is event oriented to its core. It connotes conduct and phenomena and imports no preference among all of those necessary that a plaintiff may sue. It is certainly true in cases such as this [that] the action--the improper loading in Vicksburg--was harmless when done "and on account of which no action could accrue, until the injury took place." What *Masonite* misses is that the converse is equally true. The injury could not, as a matter of common sense, take place had it not been for the conduct in the county of origin. The mere fact of injury in Chicago could not be actionable without negligence somewhere, here (at least in part) in Warren County.
>
> ...
>
> In the final analysis, venue is about convenience. The legislative prescription implies a legislative finding counties meeting certain criteria will generally be more convenient to the parties. The use of "occur" makes sense because important witnesses will often be accessible where the action occurs. Yet, there is nothing in the phrase "where the cause of action may occur...." that limits the judicial search for but a single county. Torts arise from breaches of duties causing injuries, and it is common experience that breach and causation and impact do not all always happen at once. At the very least, the word "occur" connotes each county in which a substantial component of the claim takes place, and this may include, in the present context, the negligent conduct which substantially undergirds Tanksley's claim. Anything to the contrary in *Masonite Corp. v. Burnham* or following cases stands overruled.

*Flight Line*, 608 So. 2d at 1156-57 (discussing *Masonite Corp. v. Burnham*, 164 Miss. 840, 146 So. 292 (1933)).

¶27. In fact, the argument in *Flight Line* was specifically that proper venue was either in Chicago, Illinois, where the injury occurred, or Rankin County, Mississippi, Flight Line's principal place of business. This Court did not find that venue was improper in any of those places, rather it found that venue was not improper in Warren County, where "part of Flight Line's negligence occurred." *Flight Line*, 608 So. 2d at 1157.

¶28. In *Masonite*, plaintiffs brought suit against a manufacturing plant to recover damages for injuries, which they claimed were caused by the plant's pollution of a creek running by their land. *Masonite*, 146 So. at 293. Defendants claimed that venue was improper in the Ellisville district where the plaintiff's land was situated, as the alleged pollution would have originated in the Laurel district where the plant was located. *Id*. This Court held that venue was proper in the county where the plaintiff's property was located, finding that "[t]he polluted waters were entirely harmless so far as appellees were concerned until they reached the Ellisville district; there the injuries took place, although the cause arose in the Laurel district." *Id*. at 294. *Flight Line* overruled *Masonite*. However, by implication, it limited its overruling of *Masonite* to anything in that case or cases following it which implied that venue was limited to the county where the injury occurred. 608 So. 2d at 1156-57.

¶29. This Court did not find that the holding in *Masonite* was incorrect. The case sub judice is similar to the situation in *Masonite*, as the alleged actions of Welch, Auto Plex and Trustmark, were relatively harmless until the accident occurred, which necessitated reliance on the defendants' alleged guarantee, as averred by the Stubbses, that the Stubbses' vehicle would be insured until they were covered by their own insurance. As this Court has recently held, a perusal of our case law regarding venue reveals that "a cause of action accrues for venue purposes either where the actual tortious conduct occurs *or where the plaintiff suffers actual injuries from the negligence* (as opposed to the mere manifestation of pre-existing injuries)." *Wal-Mart Stores, Inc. v. Johnson*, 807 So. 2d 382, 387 (Miss. 2002) (emphasis added). Thus, in the present case, while venue would be proper in Simpson County or Hinds County, it is also proper in Smith County. As the general rule is that the plaintiff's choice rules regarding venue, unless venue is improper for some reason, we find that the trial court erred in transferring venue to Simpson County.

## CONCLUSION

¶30. We find that no Farm Bureau coverage existed, and thus venue was not proper in Smith County under § 11-11-7. However, we find that venue is proper in Smith County under § 11-11-3. Thus, we reverse the trial court's order and remand to Smith County for further proceedings consistent with this opinion.

¶31. **REVERSED AND REMANDED.**

**PITTMAN, C.J., COBB AND CARLSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND EASLEY, JJ. WALLER, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶32. I agree to reverse and remand this case to Smith County since venue was proper there. However, I disagree with the determination that no coverage existed through Farm Bureau. The plurality seems to have

overlooked that this case is before us on interlocutory appeal. The Stubbses are entitled to a trial on the facts of this case. The issue of coverage here is a factual determination to be made by a jury. *See Merrimack Mut. Fire Ins. Co. v. McDill*, 674 So.2d 4 (Miss. 1996); *Dixie Ins. Co. v. Mooneyhan,* 684 So.2d 574 (Miss. 1996); *Crawley v. Am. Pub. Life Ins. Co.*, 603 So.2d 835 (Miss. 1992); *Miss. Farm Bureau Mut. Ins. Co. v. Todd*, 492 So.2d 919 (Miss. 1986). Stubbs had insurance policies in place, and Farm Bureau was contacted regarding coverage on the Corvette. These and other facts should be weighed by a jury to resolve the coverage issue. This claim should not be summarily denied at this time on interlocutory appeal.

¶33. Accordingly, I concur in part and dissent in part.

### DIAZ AND EASLEY, JJ., JOIN THIS OPINION.

1. Indirect financing is the process regulated by Mississippi's Motor Vehicle Sales Finance Law, Miss. Code Ann. §§ 63-19-1 to -57 (1996 & Supp. 2001). In an indirect loan transaction, a "retail buyer" (§ 63-19-3(c)) - A. W. and John in this case - purchases a car from a "retail seller," (§ 63-19-3(d)) - the Auto Plex - and obtains financing via a "retail installment contract" (§ 63-19-3(g)). The seller is the original creditor, but typically the contract is promptly assigned to a "sales finance company" such as a bank - Trustmark - which becomes the "holder." (§ 63-19-3(e), (k)). The assignment is likewise governed by statutory rules. ("Acquisition of contract from seller," § 63-19-45).

2. Although the Farm Bureau did not challenge venue in its first answer, after this case was removed to federal court and then remanded back to Smith County, the Farm Bureau filed a second answer which did challenge venue. No objection to the filing of this second answer was made by the Stubbses until they filed the instant interlocutory appeal.