153 P.3d 1144

Sosaiete L. **SAVINI** and Bette Savini, Plaintiffs–Appellees,

v.

**UNIVERSITY OF HAWAI'I,**
Defendant–Appellant,

and

**John Does 1–10, Jane Does 1–10, Doe Partnerships 1–10, Doe Corporations 1–10, Doe Non–Profit Entities 1–10, and Doe Governmental Entities 1–10, Defendants.**

No. 26747.

Supreme Court of Hawai'i.

March 19, 2007.

Francis T. O'Brien, on the briefs, for the plaintiffs-appellees Sosaiete L. Savini and Bette Savini.

Robert A. Mash, of the Office of the General Counsel of the University of Hawai'i, on the briefs, for the defendant-appellant University of Hawai'i.

Deirdre Marie–Iha, Deputy Attorney General, on the briefs, for the amicus curiae State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

The defendant-appellant University of Hawai'i (UH) appeals from the first circuit court's July 12, 2004 order, the Honorable Gary W.B. Chang presiding, denying UH's April 7, 2004 motion (citing Hawai'i Revised Statutes (HRS) § 662–4 (1993) and Hawai'i Rules of Civil Procedure (HRCP) Rule

12(b)[1]), to dismiss the June 5, 2001 first amended complaint of the plaintiffs-appellees Sosaiete L. and Bette Savini [hereinafter, "the Savinis"].

On appeal, UH asserts that the Savinis' claim for relief is barred by HRS § 662–4 inasmuch as more than two years elapsed between the onset of the Savinis' injuries—which, UH asserts, triggered the "accrual" of their claim—and the Savinis' initiation of their lawsuit more than three years later.

As we hold *infra* in section III.B.5, the Savinis' claim did not accrue until the quantum of the medical care they actually received exceeded the medical-rehabilitative limit set forth in HRS § 431:10C–306(b)(2) (1993).[2] It follows that the circuit court correctly denied UH's motion to dismiss and, accordingly, we affirm the circuit court's July 12, 2004 order.

## I. BACKGROUND

The Savinis allege that, on November 13, 1997, UH professor Thomas T. Bopp, while driving a vehicle owned by the State of Hawai'i [hereinafter, "the State"] at Honolulu International Airport, struck and physically injured Sosaiete and, hence, inflicted emotional distress on Bette. These facts [hereinafter, "the accident"][3] were alleged both in the Savinis' April 3, 2001 complaint for damages against the State and Bopp and in their June 5, 2001 first amended complaint, which was materially identical except that it changed the named defendants by substituting UH for Bopp and the State.

On April 7, 2004, UH moved to dismiss the Savinis' action pursuant to the State Tort Liability Act (STLA), HRS ch. 662, in particular HRS § 662–4, and HRCP Rule 12(b), *see supra* note 1. In particular, UH argued that the Savinis "were required to file their claim within two years of the date of the accident." (Citing *Waugh v. Univ. of Hawai'i*, 63 Haw. 117, 128, 621 P.2d 957, 966 (1981); *Bissen v. Fujii*, 51 Haw. 636, 638, 466 P.2d 429, 431 (1970); *Rumball v. State*, Civ.

---

1. HRS § 662–4, entitled "Statute of limitations," provides: "A tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues, *except in the case of a medical tort claim when the limitation of action provisions set forth in [HRS § ] 657–7.3 shall apply*." (Emphasis added.) The legislature added the emphasized text on June 9, 1976. *See* 1976 Haw. Sess. L. Act 219, §§ 16 and 23 at 539, 541.

HRCP Rule 12(b) permits certain defenses or objections to be raised by motion rather than in a responsive pleading, including "(1) lack of jurisdiction over the subject matter" and "(6) failure to state a claim upon which relief can be granted."

2. HRS § 431:10C–306, entitled "Abolition of tort liability," provided in relevant part:

(a) Except as provided in subsection (b), [the Hawai'i Motor Vehicle Insurance Law, HRS ch. 431, art. 10C,] abolishes tort liability of the following persons with respect to accidental harm arising from motor vehicle accidents occurring in this State:

(1) Owner, operator, or user of an insured motor vehicle; or

(2) Operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle.

(b) Tort liability is not abolished as to the following persons ... in the following circumstances:

....

(2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in [HRS § ] 431:10C–308 for expenses provided in [HRS § ] 431:10C–103(10)(A) and (B)[ (concerning personal injury protection benefits) ]....

....

Effective January 1, 1998, the legislature repealed the floating medical-rehabilitative limit, fixed the threshold at $5000.00, and further amended HRS § 431:10C–306 in respects immaterial to the present matter. *See* 1997 Haw. Sess. L. Act 251, §§ 43, 51, and 70 at 542, 551, 553. Effective July 20, 1998, the legislature defined more precisely the amounts to be included in the calculation of expenditures and, effective July 20, 1998 and January 1, 2002, further amended HRS § 431:10C–306 in immaterial respects. *See* 2001 Haw. Sess. L. Act 157, §§ 31 and 39 at 401, 404; 1998 Haw. Sess. L. Act 275, §§ 22–23 and 37 at 934, 940.

3. Nowhere do UH or the Savinis discuss any specifics of the accident or the Savinis' alleged injuries, nor are they particularly relevant to this appeal. Inasmuch as UH raised the statute of limitations as a defense and the Savinis did not produce any colorable evidence that their injuries were latent for a period following the accident, or that UH's tortious conduct was continuing, we assume that the Savinis were injured and should have known they were injured, if at all, immediately upon the occurrence of the accident.

No. 04–1–0038K (Haw.3d Cir. May 4, 2004); *Brub v. Bedish,* Civ. No. 03–1–0500–03 (Haw. 1st Cir. Oct. 22, 2003); *Wollman v. Gross,* 637 F.2d 544, 547 (8th Cir.1980); *Mendiola v. United States,* 401 F.2d 695, 697 (5th Cir. 1968); *United States v. Webb Trucking Co.,* 141 F.Supp. 573, 575 (D.Del.1956).) In their memorandum in opposition, the Savinis urged (1) that "accrue" and "occur" are distinct terms and concepts, as construed by this court and by the Mississippi Supreme Court, (2) that, regardless of the date of the accident, their "claim" did not "accrue," within the meaning of HRS § 662–4, until the medical-rehabilitative limit set forth in HRS § 431:10C–306(b)(2), *see supra* note 2, was exceeded, and (3) that the medical-rehabilitative limit constitutes a threshold quantum of resultant medical expenses beneath which motor vehicle accidents are generally [4] characterized as "no-fault" such that, as a matter of law, tort liability does not attach to personal injuries. (Quoting *Teller v. Teller,* 99 Hawai'i 101, 110, 53 P.3d 240, 249 (2002) (quoting *In re Akana,* 42 Haw. 415, 444 (1958) (Stainback, J., dissenting) ("The dictionary gives the following definition for the word 'accrue': 'To come into existence as an enforceable claim; to vest as a right; as, a cause of action has accrued when the right to sue has become vested.' ")); *Stubbs v. Miss. Farm Bureau Cas. Ins. Co.,* 825 So.2d 8, 15 (Miss.2002) (" 'Occur' and 'accrue' are not synonymous, legally or otherwise....").) The Savinis noted that HRS § 431:10C–315 [5] provides that the limitation period "runs from the date of the accident or ... of the last no-fault payment,[ [6]] whichever is later." Further to the foregoing, the Savinis assert-

ed that, as of April 3, 1999, two years prior to the filing of their original complaint, Sosaiete's workers' compensation carrier had expended only $1244.06 on his behalf, *i.e.,* less than the monetary threshold, which was $13,900.00 at the time of the accident, *see* Hawai'i Administrative Rules § 16–23–10(c) (1999). The Savinis attached an "Exhibit A," which appears to be a statement of workers' compensation benefits paid on Sosaiete's behalf, and a declaration of the Savinis' counsel purporting to authenticate the exhibit. In its reply, UH added that, inasmuch as the legislature, in 1976, amended HRS § 662–4 expressly to protract the STLA's limitation period to six years in medical malpractice cases involving a plaintiff's late discovery of the injury, *see supra* note 1, but did not create "any exception for ... automobile accidents," the legislature did not contemplate extending the limitation period beyond two years after the occurrence of the accident itself.

At its June 1, 2004 hearing, the circuit court ruled in relevant part as follows:

[T]he cause of action does not accrue until ... the plaintiff reaches the thresh[ ]old and this record does not indicate when the thresh[ ]old was met.

I think it indicates that [the Savinis] ha[ve] incurred at least $17,000 ... of expenses, but it doesn't show when in time the tort thresh[ ]old amount of [$]13,[9]00 ... was met.... I'm interpreting that word "accrued" to begin ... upon that point in time when the plaintiff incurs or is paid the thresh[ ]old amount of no-fault [sic—presumably, "workers' compensation," *see supra* note 6,] benefits.

(1) Two years after the date of the motor vehicle accident upon which the claim is based; [or]

. . . .

(3) Two years after the date of the last payment of workers' compensation ... benefits arising from the motor vehicle accident.

Effective July 20, 1998, the legislature amended a different subsection in immaterial respects. *See* 1998 Haw. Sess. L. Act 275, §§ 28 and 37 at 935–36, 940.

**6.** Presumably, the Savinis mean to include "workers' compensation benefits," inasmuch as their Exhibit A implies that they crossed the monetary threshold by virtue of the workers' compensation payment of October 23, 2000.

---

**4.** None of the parties discuss the "verbal threshold," HRS § 431:10C–306(b)(1) to (3) (Supp. 2001), whereby sufficiently serious and permanent injuries (or death) are deemed to trigger tort liability without proof that the monetary threshold has been exceeded. We proceed on the assumption that the verbal threshold does not apply to the present matter.

**5.** HRS § 431:10C–315(b) (1993), *amended by* 1997 Haw. Sess. L. Act 251, §§ 49 and 70 at 545, 553, provided in relevant part:

No suit arising out of a motor vehicle accident shall be brought in tort more than the later of:

Accordingly, the circuit court's July 12, 2004 order denied UH's motion to dismiss, concluding that "[a] claim against [UH] arising out of a motor vehicle accident does not 'accrue,'" and "the two-year statute of limitations ... does not begin to run[,] ... until medical/rehabilitative expenses incurred by the injured person exceed the applicable tort threshold." On August 5, 2004, the circuit court ordered that UH could pursue an interlocutory appeal from its July 12, 2004 order, *see* HRS § 641–1(b) (1993). On August 9, 2004, UH filed its timely notice of appeal.

## II. STANDARDS OF REVIEW

### A. Denial Of Summary Judgment [7]

 We review the circuit court's grant or denial of summary judgment *de novo. Hawai'i C[m]ty[.] Fed[.] Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if

proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Querubin v. Thronas*, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004) (quoting *Simmons v. Puu*, 105 Hawai'i 112, 117–18, 94 P.3d 667, 672–73 (2004) (quoting *Kahale v. City & County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (quoting *SCI Mgmt. Corp. v. Sims*, 101 Hawai'i 438, 445, 71 P.3d 389, 396 (2003) (quoting *Coon v. City & County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002))))))).

*Willis v. Swain*, 112 Hawai'i 184, 188–89, 145 P.3d 727, 731–32 (2006) (brackets in original).

### B. Statutory Interpretation

 "The standard of review for statutory construction is well-established.

.....

In the present matter, the Savinis' own memorandum in opposition to UH's motion to dismiss drew the circuit court's attention to facts beyond the scope of their complaint, and the circuit court relied upon the allegation that the Savinis' PIP benefits had accrued piecemeal. *Cf. Ruf v. Honolulu Police Dep't*, 89 Hawai'i 315, 321, 972 P.2d 1081, 1087 (1999) (where "there [wa]s no indication ... that the circuit court ... relied upon any facts that were not alleged in the ... complaint," holding that mere "references to facts outside the pleadings" in the defendant's motion to dismiss did not "transform" it into a motion for summary judgment); *Au v. Au*, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981) (where "there [wa]s no indication in the record of whether the trial court considered the interrogatories in making its ruling," holding that "motion to dismiss was not transformed into one for summary judgment"). Accordingly, we apply the summary judgment standard of review rather than limiting ourselves to the allegations set forth in the complaint.

---

7. If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [HRCP] Rule 56....

HRCP Rule 12(b). HRCP Rule 56, entitled "Summary Judgment," provides in relevant part:

(c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

....

(e) ... [D]efense required. ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial....

The interpretation of a statute is a question of law which this court reviews *de novo.*" *Liberty Mut. Fire Ins. Co. v. Dennison,* 108 Hawai'i 380, 384, 120 P.3d 1115, 1119 (2005) (quoting *Labrador v. Liberty Mut. Group,* 103 Hawai'i 206, 211, 81 P.3d 386, 391 (2003)) (internal quotation marks omitted). In so doing, this court must adhere to the well-established rule of statutory construction that the "foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Gray v. Admin. Dir. of [the] Court,* 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (citations omitted).

*Wright v. Home Depot U.S.A., Inc.,* 111 Hawai'i 401, 407, 142 P.3d 265, 271 (2006).

### III. DISCUSSION

#### A. The Parties' Arguments

On appeal, UH begins with a disquisition on sovereign immunity, implying that to hold that the Savinis' claim did not accrue until they exceeded the medical-rehabilitative limit would exceed the scope of the State's (and, hence, UH's) consent to suit set forth in the STLA, HRS ch. 662:

... The language of the no-fault statutes at issue here do not purport to change the STLA's statute of limitations[, HRS § 662–4, *see supra* note 1]....

... [T]he two-year statute of limitation [ (UH presumably means "the Savinis' claim") ] "accrue[d]" at the time of the motor vehicle accident. Any attempt to manipulate [HRS § 662–4] by changing the legal meaning of "accrual" to accommo-

date one's sense of public policy offends [its] plain language.... [I]ts protections should not be watered down by anyone other than the State Legislature.

(Quoting Haw. Const. art. X, § 5 ("[UH] is ... established as the state university and constituted a body corporate."); HRS §§ 304–2 (1993) (same), 304–6(a) (Supp.1999) ("[UH] shall be subject to suit only in the manner provided for suits against the State.... All defenses available to the State, as well as all limitations on actions against the State, shall be applicable to [UH].");[3] *Taylor–Rice v. State,* 105 Hawai'i 104, 110–11, 94 P.3d 659, 665–66 (2004); *Fought & Co., Inc. v. Steel Eng'g & Erection Co.,* 87 Hawai'i 37, 55, 951 P.2d 487, 505 (1998); *Waugh,* 63 Haw. at 125, 621 P.2d at 965; *Oahu Ry. & Land Co. v. United States,* 73 F.Supp. 707, 708 (D.Haw.1947).) (Citing *Chun v. Bd. of Trs. of Employees' Ret. Sys.,* 106 Hawai'i 416, 106 P.3d 339 (2005).) UH's points of error reduce to a single issue: whether the Savinis' claim accrued at the time of the accident or when the amounts paid or accrued by virtue of Sosaiete's injury exceeded the $13,900.00 monetary threshold, *see supra* section C.[9] UH argues:

[T]he two-year statute of limitation "accrues" at the time of the motor vehicle accident.

. . . .

... HRS § 662–4 does not provide for any delay of the onset of the ... period ... by ... the Hawai'i Motor Vehicle Insurance [L]aw[, HRS ch. 431, art. 10C].

. . . .

Admittedly, if this Court were to reverse the ruling of the circuit court ... and hold

---

8. On July 1, 2006, the legislature effectively moved the quoted portions of HRS §§ 304–2 and –6(a) to the newly created HRS §§ 304A–103 and –108(a), respectively. *See* 2006 Haw. Sess. L. Act 75, §§ 2 and 23 at 146–47, 214.

9. Or, as the State of Hawai'i, as *amicus curiae,* expresses it, "[d]oes the tort threshold law, [HRS § 431:10C–306(b)(2), *see supra* note 2,] a law of general applicability that does not expressly include the State, impliedly expand the waiver of sovereign immunity and applicable statute of limitations in the STLA?" (Citing, *e.g., Taylor-Rice; Vail v. Employees' Ret. Sys.,* 75 Haw. 42, 55, 856 P.2d 1227, 1235 (1993); *Whittington v.*

*State,* 72 Haw. 77, 78, 806 P.2d 957, 958 (1991); *Big Island Small Ranchers Ass'n v. State,* 60 Haw. 228, 236, 588 P.2d 430, 436 (1978); *A.C. Chock v. Kaneshiro,* 51 Haw. 87, 451 P.2d 809 (1969); *Marks v. Ah Nee,* 48 Haw. 92, 96, 395 P.2d 620, 622 (1964); *Long Island Radio Co. v. NLRB,* 841 F.2d 474, 477 (2d Cir.1988); *Childers v. United States,* 442 F.2d 1299, 1303 (5th Cir. 1971); *Oahu Ry. & Land Co.,* 73 F.Supp. at 708; *Carter v. Cross,* 373 So.2d 81, 82 (Fla.Dist.Ct.App. 1979); *Stephens v. Dixon,* 449 Mich. 531, 536 N.W.2d 755, 759 (1995); *Jackson v. L.P. Transp.* 72 N.Y.2d 975, 534 N.Y.S.2d 362, 530 N.E.2d 1282, 1282 (1988).)

that the two year statute of limitation is strictly interpreted, there would be a "gap" for ... persons who do not meet the dollar level threshold prior to the expiration of the two years. However, the proper forum to address this gap is the Legislature. UH contends "that it is obvious that the term 'accrue' in this context means th[e] date of the ... accident." (Quoting *Waugh*, 63 Haw. at 128, 621 P.2d at 968; *Wollman*, 637 F.2d at 547.) (Citing *Bissen; Mendiola*, 401 F.2d at 697; *Webb Trucking*, 141 F.Supp. at 575.) Quoting *Whittington v. State*, 72 Haw. 77, 79, 806 P.2d 957, 958 (1991), UH adds that we have previously "refused to extend HRS § 662–4."

In their answering brief, the Savinis counter that HRS § 662–4's use of the term "accrues" contemplates that the two-year period began when they had a viable claim for relief over which the circuit court had jurisdiction, *i.e.*, when the workers' compensation insurer's outlays exceeded the sum of $13,900.00. They reiterate that HRS § 431:10C–315, *see supra* note 5, provides that the applicable limitation period "runs from ... the accident or ... the last no-fault payment, [sic, *see supra* note 6,] whichever is later." Furthermore, they urge that UH misconstrues *Waugh*, which "recognized" "the date when harm occurred and the date when a claim accrued ... as being two potentially different dates." (Quoting 63 Haw. at 127, 621 P.2d at 968.)

B. *Analysis*

1. *Introduction*

■ In general, "[a] cause of action for negligently harming a person ... is complete when the harm occurs." Restatement (Second) of Torts § 899 cmt. c (1979 & Supp. 2006). However, a harmful incident and the "accru[al]" of a resulting claim for relief may be temporally distinct under certain circumstances, such as where the tortious conduct is of a continuing character or the plaintiff's discovery of the cause of action is justifiably forestalled. *See, e.g., Blair v. Ing*, 95 Hawai'i 247, 264, 21 P.3d 452, 469 (2001) (quoting *Hays v. City & County of Honolulu*, 81 Hawai'i 391, 393, 917 P.2d 718, 720 (1996)). The question before us—whether the accrual

of a tort claim, particularly against a sovereign defendant, is delayed until the accumulation of medical expenses exceeding the monetary threshold—is one of first impression in Hawai'i.

In other jurisdictions, "the statute of limitations may ... run even if the ... certain sum of money that must be exceeded before recovery may be had[ ] has not been attained." Martin J. McMahon, Annotation, *When Statute of Limitations Commences to Run on Automobile No–Fault Insurance Personal Injury Claim*, 36 A.L.R.4th 357, 362, 1985 WL 287290 (1985 & Supp.2007); *see also* Lee R. Russ in consultation with Thomas F. Segalia, *Couch on Insurance* § 125:71 (3d ed. 2006) ("The injured person may maintain suit even though the monetary threshold has not been fully satisfied, provided it is clear that additional medical expense will be incurred and that the plaintiff will then exceed the threshold."). Nevertheless, we conclude that, under Hawai'i law, a plaintiff who relies on the medical-expense threshold as opposed to a verbal threshold, *see supra* note 4, has no claim at all, and the statute of limitations does not begin to run, until the plaintiff has actually received the requisite amount of "reasonably necessary" medical-rehabilitative treatment, as manifested through bills received or paid.

2. *For a viable tort claim to accrue under the monetary-threshold exception, a plaintiff, or a collateral source providing benefits to the plaintiff, must have actually incurred expenses that exceed the statutory threshold.*

■ The plain language of HRS § 431:10C–306(a), *see supra* note 2, indicates the legislature's intent to "abolish[ ]" tort liability derived from motor vehicle accidents except in cases of serious injury, leaving motor-vehicle-tort plaintiffs "generally" to "seek reparations from his [or her] own insurance company," the insurer "of the vehicle in which [s/]he was a passenger," or, in the case of an injured pedestrian, "an insurance company covering any vehicle which caused injury to him" or her. *See* Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal at 636; Hse. Conf. Comm. Rep. No. 13, in 1973

House Journal at 1219. In carving out the exceptions in HRS § 431:10C–306(b), the legislature created the monetary threshold so that, even without satisfying the "verbal threshold," *see supra* note 4, tort liability for a plaintiff's injuries would arise so long as the plaintiff could demonstrate that the injuries were sufficiently costly.[10] *See generally* 5–47 Damages in Tort Actions § 47.04[1][a] (LexisNexis 2006) ("The theory is that, once an injury requires a certain amount of treatment, it will be deemed a serious one even though it may not be specifically listed as a 'serious injury' under the verbal threshold."). To that end, HRS § 431:10C–315(b), *see supra* note 5, which UH conspicuously omits from its arguments, operates in tandem with HRS § 431:10C–306(b), extending the plaintiff's limitation period until unrealized medical expenses have accumulated and the gravity of the plaintiff's injury and, hence, the presence or absence of a claim for which relief can be granted, is ascertainable. In other words, HRS § 431:10C–306 enables, indeed *requires*, would-be plaintiffs to "wait and see" whether their expenses will be great enough to shift responsibility to another party. The claim having "accrued" at such time after the accident as the monetary threshold requirement is satisfied, HRS §§ 431:10C–315(b) generally allows the plaintiff to bring a lawsuit for up to two years after "(2) motor vehicle insurance[,] . . . optional additional benefits[,] . . . (3) . . . workers' compensation[, and] public assistance benefits . . . have ceased."

In sum, construing HRS §§ 431:10C–306(b)(2) (1993) and 431:10C–315(b) so as to postpone "accrual" of claims based upon the medical-rehabilitative limit is necessary to effectuate the legislature's "aboli[tion]" of most motor vehicle tort lawsuits. For a plaintiff to sue based on the mere expectation that expenses *might* exceed the medical-rehabilitative threshold would be to pursue a claim that the legislature has expressly abolished. Moreover, the possibility of an *eventually* ripe claim does not justify a premature complaint: not even the best expert witness

can ensure that such an inchoate claim will accrue before the plaintiff convalesces or dies due to causes unrelated to the alleged tort.

3. *UH's sovereign status and HRS § 662–4 do not affect the accrual date of the Savinis' claim.*

■ Furthermore, the "wait-and-see" rule applies regardless of the sovereign status of the defendant. We agree with UH that, when the legislature amended the STLA in 1976 so as to lengthen the limitation period for medical malpractice claims, *see supra* note 1, it similarly could have extended, but did not, the life of motor vehicle tort claims. Nonetheless, this observation is of no avail to UH inasmuch as, until they reached the medical-rehabilitative limit, the Savinis' claim had not "accrued." To construe the STLA's usage of "accrue" any more narrowly would be to resuscitate a class of tort claims that the legislature abolished.

Nevertheless, the defendant's sovereign status could be relevant under circumstances not present in this case. Had the Savinis waited more than two years *after* the monetary threshold had been satisfied to file their lawsuit, UH could have relied on HRS § 662–4 as a statute of repose, regardless of whether two years had elapsed since "the last payment of workers' compensation," *cf.* HRS § 431:10C–315(b)(3). In other words, HRS § 662–4 may accord a sovereign defendant some protection beyond that of HRS § 431:10C–315(b), but it is of no consequence in the present matter. Sosaiete having apparently exceeded the medical-rehabilitative limit on October 23, 2000, *see supra* note 6, HRS § 662–4 afforded the Savinis two years from the accrual of their claim—*i.e.*, through October 23, 2002—within which to file their lawsuit. Accordingly, their April 3, 2001 complaint and June 5, 2001 first amended complaint were timely filed.

4. *UH's discussion of case law is unpersuasive.*

UH founders on extrajurisdictional interpretations of statutes that are materially dis-

---

**10.** We said as much in *Ho v. Leftwich*, 88 Hawai'i 251, 258, 965 P.2d 793, 800 (1998) ("[T]he provisions of HRS § 431:10C–306 . . . permit[] calculation of expenses for the purpose of satisfy-ing the threshold requirement either on the basis of those *already paid* or those merely *accrued.*" (Emphases added.)).

tinct from those under scrutiny here. "*Wollman* stands on all fours with the instant case" is quite an overstatement; neither it nor *Mendiola* nor *Webb Trucking* involved a statutory tolling or delay provision, a medical threshold, or any comparable statutory exception to a general abolition of tort liability. In *Wollman,* the United States Court of Appeals for the Eighth Circuit[11] affirmed a federal district court's dismissal of the plaintiff's complaint on the grounds that it "had not been presented within two years of … the accrual of the claim as required by [28 U.S.C. 2401(b) ]." 637 F.2d at 546. The plaintiff sought a judicial extension of the limitation period on the grounds that, while he knew that the defendant worked for the federal government, he did not know "of the legal significance of this fact," *i.e.,* that the government might have been liable. *See id.* at 547–49. Specifically, the plaintiff relied upon the "blameless ignorance" doctrine and the rule of *United States v. LePatourel,* 593 F.2d 827, 831–32 (8th Cir.1979), which effectively delayed the onset of a limitation period pending the resolution of a "novel question of law." *See id.* at 547–48. The defendant's arguable sovereign status was irrelevant to the court's conclusion that the plaintiff's belated development of his *respondeat superior* theory did not constitute "blameless ignorance" or trigger the *LePatourel* rule. *See id.* at 548, 549 & n. 6. On the other hand, in the present matter, it is uncontroverted that Sosaiete was receiving workers' compensation benefits through at least November 20, 2000, and would be entitled to a full two-year extension from that date pursuant to HRS § 431:10C–315(b)(3), *see supra* note 5, were UH's sovereign immunity not at issue.[12]

*Waugh* is similarly inapposite. UH urges that, according to *Waugh,* because the Savinis " 'knew or should have known' " about

their injuries as soon as Sosaiete was struck, the claim "accrued" at that moment. (Quoting 63 Haw. at 128, 621 P.2d at 966.) Essentially, UH attacks a straw man by arguing that the "discovery" rule, *see supra* E.2.a, does not toll the limitation period in the present matter. It is uncontested that the Savinis possessed immediate knowledge of their injuries. Their entitlement to a delayed onset of the limitation period did not spring from any ignorance of fact but, rather, from the delay between the onset of Sosaiete's injuries and the accumulation of sufficient medical expenses to create an exception to the no-fault paradigm, thereby giving rise in the first instance to potential tort liability on UH's part.

### 5. *Conclusion*

In the present matter, UH was not liable to the Savinis, if at all, until Sosaiete's injuries had provoked more than $13,900.00 in actual, incurred expenses. According to Exhibit A, Sosaiete exceeded the medical-rehabilitative limit within the two-year period prior to the filing of the Savinis' complaint. Consequently, the Savinis' claim had accrued by the time they filed their complaint but not more than two years prior. That being the case, the complaint was timely in accordance with HRS § 662–4, *see supra* note 1.

We recognize that today's holding might inconvenience future parties who would prefer to litigate early under circumstances where it is virtually certain[13] that the plaintiff's injuries will give rise to medical expenses over $5,000.00 (the current threshold, *see* HRS § 431:10C–306(b)(4) (2005)), but will not do so until considerable time has elapsed. Such a scenario would be exceptional and capable of amelioration by the legislature.[14]

---

**11.** Federal jurisdiction was predicated upon the defendant's conduct as an employee of the federal government. *See* 637 F.2d at 546.

**12.** Nor is *Whittington* pertinent to the present matter. In that case, we rejected the plaintiff's argument that the statute of limitations was tolled during his infancy, inasmuch as the tolling provision limited itself to "action[s] specified in [HRS ch. 657, pt. I]," expressly excluding the STLA, under which the *Whittington* plaintiff sued. 72 Haw. at 77–78, 806 P.2d at 957–58. In

contrast, HRS § 431:10C–315(b)(3), does not facially exclude STLA actions.

**13.** Again, assuming neither tragedy nor cure intervenes.

**14.** A few states' statutes currently permit the plaintiff to satisfy the monetary threshold based upon the expectation of *future* expenses. *See, e.g.,* 5–47 *Damages in Tort Actions, supra* section E.2.b, § 47.04[2][d] (citing Ky.Rev.Stat. Ann. § 304.39–060(2)(b); Minn.Stat.

*See generally* 2–19 *No–Fault & Uninsured Motorist Auto Insurance* § 19.60 (LexisNexis 2006); *Stackhouse v. Schneider,* 559 A.2d 306, 308 n. 5 (D.C.1989) (" '[I]f there is a perceived need ... to set a[n] ... outer time limit ..., the proper way to do so is by a statute of repose.' ") (quoting *Bussineau v. President & Dirs. of Georgetown Coll.,* 518 A.2d 423, 436 (D.C.1986)).

## IV. CONCLUSION

In light of the foregoing analysis, we hold that the Savinis' two-year limitation period under HRS § 662–4, *see supra* note 1, began

to run as soon as (1) the Savinis had incurred or paid actual expenses sufficient to exceed the medical-rehabilitative limit *and* (2) Sosaiete's workers' compensation benefits had ceased. Accordingly, we affirm the circuit court's July 12, 2004 order denying UH's motion to dismiss.

§ 65B.51(3)(a)(1)); *Montag v. Bergen Bluestone Co.,* 145 N.J.Super. 140, 366 A.2d 1361, 1362–63 (1976) (where threshold required that "expense incurred or *to be incurred*" equal or exceed $200.00, agreeing with plaintiff's position "that the cause of action did not accrue ... until she actually incurred or should have known she *would* incur $ 200 in ... medical expenses" (emphases added)); *Correll v. Costello,* 94 Misc.2d 397, 404 N.Y.S.2d 836, 837–38 (1978).