**Electronically Filed
Supreme Court
SCWC-12-0001090
13-MAR-2020
09:30 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

GARY MOBLEY, Respondent/Plaintiff-Appellant,

vs.

LYANNE KIMURA, Respondent/Defendant/Cross-Claim Defendant/Cross-Claimant/Third-Party Plaintiff/Counterclaim Defendant-Appellee, LESLIE S. CHING, Respondent/Defendant/Cross-Claimant/Cross-Claim Defendant-Appellee,

and

DENNIS K. ESPANIOLA, Petitioner/Third-Party Defendant/Counterclaimant/Cross-Claimant/Cross-Claim Defendant-Appellee.

_____

SCWC-12-0001090

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0001090; CIVIL NO. 1CC091002674)

MARCH 13, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

This case arises from a personal injury lawsuit filed by Gary Alan Mobley ("Mobley") against the drivers of two vehicles

in two separate accidents, from which Mobley alleges injuries. The accidents occurred on June 8, 2005, and January 12, 2008. Mobley filed a complaint in the Circuit Court of the First Circuit ("circuit court") against Leslie S. Ching ("Ching") for the 2005 accident and Lyanne Kimura ("Kimura") for the 2008 accident.  Kimura then impleaded Dennis K. Espaniola ("Espaniola") as a third-party defendant because of his involvement in the 2008 accident.

Hawai'i Revised Statutes ("HRS") § 431:10C-306(a) (2005) abolishes tort liability with respect to accidental harm arising from motor vehicle accidents occurring in this State unless an exception under subsection (b) applies.  Mobley's complaint alleged he was able to assert tort liability for the 2005 and 2008 accidents under either or both of two exceptions: (1) HRS § 431:10C-306(b)(4), which provides an exception to the abolition of tort liability if a person has incurred at least $5,000 in personal injury protection ("PIP") benefits (sometimes "tort threshold" or "tort threshold exception"); and/or (2) HRS § 431:10C-306(b)(2), which provides an exception for an injury that consists, in whole or in part, "in a significant permanent loss of use of a part or function of the body" (sometimes "significant permanent loss of use exception").

The circuit court granted summary judgment in favor of Kimura and Espaniola with respect to the 2008 accident, ruling

2

Mobley failed to satisfy either exception.  Before granting the defense motions, the circuit court also ruled Mobley failed to lay sufficient foundation for the admission and consideration of a doctor's report and letter attached to his opposition memorandum, then denied Mobley's oral request for a Hawai'i Rules of Civil Procedure ("HRCP") Rule 56(f) continuance to obtain admissible evidence of the contents of the doctor's documents.

In its August 15, 2019 memorandum opinion, the Intermediate Court of Appeals ("ICA") ruled, inter alia, that the circuit court erred in granting summary judgment in favor of Kimura and Espaniola for the 2008 accident.  We accepted Espaniola's application for a writ of certiorari, which presents two questions, summarized as follows:

> 1.    Did the ICA err in ruling the circuit court erred in granting Espaniola's motion for partial summary judgment based on Mobley's failure to satisfy the tort threshold?
>
> 2.    Did the ICA err in ruling that the circuit court's grant of Espaniola's motion for partial summary judgment was premature because evidence had not established that, by the time of trial, Mobley would not be able to demonstrate satisfaction of the tort threshold or prove that his injury constitutes, in whole or in part, a significant permanent loss of use of a part or function of the body?

Espaniola's questions on certiorari relate to the ICA's application of the following portion of Ralston v. Yim, 129 Hawai'i 46, 292 P.3d 1276 (2013):

In sum, this court's case law indicates that a summary judgment movant may satisfy [their][1] initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the nonmovant will be unable to carry [their] burden of proof at trial.  Where the movant attempts to meet [their] burden through the latter means, [they] must show not only that the non-movant has not placed proof in the record, but also that the movant will be unable to offer proof at trial.  Accordingly, in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support [their] initial burden of production if discovery has not concluded.  ("[M]erely asserting that the non-moving party has not come forward with evidence to support its claims is not enough.").

129 Hawaiʻi at 60-61, 292 P.3d at 1290-91 (last alteration in original) (citations omitted).

For clarity, we address the ICA's rulings on the tort threshold and significant permanent loss of use exceptions separately, rather than through the questions presented by Espaniola.

With respect to Mobley's alleged failure to satisfy the tort threshold exception, Espaniola's motion was based on the first Ralston prong, as Kimura and Espaniola allegedly "present[ed] evidence negating an element of [Mobley's] claim" by submitting a declaration stating that no PIP benefits had been paid for the 2008 accident.  Yet, the ICA ruled Espaniola was not entitled to summary judgment because of a failure to show that Mobley would be unable to offer proof at trial that he met the tort threshold.  As indicated in the passage from

---

[1]    In this opinion, "they, them, and their" are used where (1) those are the pronouns used by a specific person; or (2) the gender identity of a person referred to is unknown, unspecified, or immaterial.

Ralston above, however, the "unable to offer proof at trial" factor applies only when a movant seeks summary judgment based on the second Ralston prong, by "demonstrating that the nonmovant will be unable to carry [their] burden of proof at trial." According to Hawai'i law, when a plaintiff asserts applicability of the tort threshold exception, satisfaction of the exception is jurisdictional to the filing of a lawsuit. Therefore, the ICA erred to the extent it ruled Espaniola could not obtain summary judgment on the tort threshold exception unless he could show Mobley could not demonstrate he could meet the tort threshold at the time of trial.

We also hold, however, that the ICA did not err in vacating the circuit court's grant of summary judgment as to the 2008 accident based on the tort threshold exception. This is because Espaniola failed to meet his initial burden under the first Ralston prong of "negating an element of [Mobley's] claim." The tort threshold exception of HRS § 431:10C-306(b)(4) requires that a plaintiff have "incurred" PIP benefits of $5,000, and reviewing the record de novo, Mobley's amended answers to interrogatories, attached to Kimura's motion for summary judgment,[2] raised a genuine issue of material fact on the applicability of the exception.

---

[2]    HRCP Rule 56(e) (2000) provides in relevant part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such
(continued. . .)

The ICA also did not err with respect to its application of Ralston with respect to the significant permanent loss of use exception. Espaniola presented no evidence to negate this exception to the abolition of tort liability. Espaniola's motion for partial summary judgment was, therefore, based on the second Ralston prong. The ICA properly concluded Espaniola did not meet his burden of establishing that Mobley would be unable to offer proof of this exception at trial; based on the record, whether Mobley could meet the exception was not "so clear that reasonable minds could only come to one conclusion."

We therefore affirm the ICA's August 29, 2019 judgment on appeal, which vacated the circuit court's March 6, 2013 judgment and remanded the case for reinstatement of Mobley's claims related to both the 2005[3] and 2008 accidents, but as modified by the analysis in this opinion.

---

(. . .continued)
facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein[,]" and HRCP Rule 56(c) provides in relevant part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[3]     See infra notes 4, 15, and 18.

## II.  Background

### A.    HRS § 431:10C-306

HRS § 431:10C-306,[4] entitled "Abolition of tort liability,"

will be continually referenced.  It states in relevant part as

follows:

> (a) Except as provided in subsection (b), this article
> abolishes tort liability of the following persons with
> respect to accidental harm arising from motor vehicle
> accidents occurring in this State:
>
>      (1) Owner, operator, or user of an insured motor
> vehicle; or
>
>      (2) Operator or user of an uninsured motor vehicle
> who operates or uses such vehicle without reason to believe
> it to be an uninsured motor vehicle.
>
> (b) Tort liability is not abolished as to the following
> persons, their personal representatives, or their legal
> guardians in the following circumstances:
>
>      (1) Death occurs to the person in such a motor
> vehicle accident;
>
>      (2) Injury occurs to the person which consists, in
> whole or in part, in a significant permanent loss of use of
> a part or function of the body;
>
>      (3) Injury occurs to the person which consists of a
> permanent and serious disfigurement which results in
> subjection of the injured person to mental or emotional
> suffering; or
>
>      (4) Injury occurs to the person in a motor vehicle accident
> and as a result of such injury that the personal injury
> protection benefits incurred by such person equal or exceed
> $5,000;[5] provided that in calculating this amount:

---

[4]     HRS § 431:10C-306 has not been amended since 2001.

[5]     At all times relevant to this case, HRS § 431:10C-103.5(a) (2005)
defined "personal injury protection benefits" as follows:

> (a) Personal injury protection benefits, with respect to
> any accidental harm, means all appropriate and reasonable
> treatment and expenses necessarily incurred as a result of
> the accidental harm and which are substantially comparable
> to the requirements for prepaid health care plans,
> including medical, hospital, surgical, professional,

(continued. . .)

7

(A) The following shall be included:

(i) Personal injury protection benefits incurred by, paid to or payable to, or on behalf of, an eligible injured person including amounts paid directly by or on behalf of the eligible insured because of the accidental harm or similar benefits under social security, worker's compensation, or public assistance laws;

(ii) The applicable amounts of deductible or copayment paid or incurred;

(iii) Amounts paid by or on behalf of an injured person who is not entitled to personal injury protection benefits, by health insurance or other funds; provided that payment in excess of the charges or services allowable under this chapter shall not be included;

(iv) Where an eligible injured person receives coverage on other than a fee for service basis including, but not limited to, a health maintenance organization operating on a capitation basis, the value of services provided shall be determined in accordance with the fee schedules allowable under this chapter for purposes of threshold determination;

(B) When a person has optional coverage, benefits received in excess of the maximum basic personal injury protection limits set forth in section 431:10C-103.5 shall not be included.

(c) Subsections (a) and (b) shall apply whether or not the injured person is entitled to receive personal injury protection benefits. The party against whom the presumption under this section is directed shall have the burden of proof to rebut the presumption.

---

(. . .continued)

nursing, advanced practice nursing recognized pursuant to chapter 457, dental, optometric, naturopathy, chiropractic, ambulance, prosthetic services, medical equipment and supplies, products and accommodations furnished, x-ray, psychiatric, physical therapy pursuant to prescription by a medical doctor, occupational therapy, rehabilitation, and therapeutic massage by a licensed massage therapist when prescribed by a medical doctor.

. . . .

## B.   Factual background

Mobley was born on July, 23, 1952, and served in the United States Army.  After leaving the military, Mobley became a junior ROTC instructor on Maui, then on Oahu.  As of the 2011 motions at issue in this appeal, Mobley had been a junior ROTC instructor at Punahou School since August 2000 and had been married to his wife, Susan, for over thirty-eight years, with whom he had two children.

The 2005 accident occurred on June 8, 2005.  Ching rear-ended Mobley on the H-1 freeway.  Mobley's motor vehicle insurance company, GEICO, classified Mobley's truck a total loss, and paid him $14,050.

The 2008 accident occurred on January 12, 2008.  Mobley was rear-ended in a chain-reaction collision on the H-1 freeway. Espaniola was directly behind Mobley when Kimura rear-ended Espaniola's vehicle, pushing it into Mobley's truck.

## C.   Procedural background

### 1.   Circuit court proceedings

#### a.   Pleadings and pre-trial

On November 13, 2009, Mobley filed a complaint against Ching and Kimura, alleging their negligence caused him injuries. Mobley alleged the 2005 accident caused pain in his neck, back, and shoulder; numbness in his hands and leg; and headaches.  He also claimed he was no longer able to run or march with his

students.  He alleged the 2008 accident aggravated his injuries from the 2005 accident.  Mobley's complaint also asserted his claims against Ching and Kimura were exempted from the abolition of tort liability because he met the required "medical threshold" and had "permanent injury and significant loss of use of a body part and function and continues to require medical attention."

Ching's December 10, 2009 answer asserted Mobley's complaint was barred by HRS § 431:10C (sometimes "no-fault law").  Ching later admitted liability for the 2005 accident, but disputed causation of Mobley's injuries and the nature and extent of Mobley's damages.

On March 3, 2010, Kimura answered, also alleging Mobley's complaint was barred by HRS § 431:10C.  Kimura also filed a third-party complaint against Espaniola, which was not served until September 24, 2010.  Ching, Kimura, and Espaniola then filed claims against each other, but Mobley did not "amend over" to assert a direct claim against Espaniola.[6]

On June 13, 2011, Kimura moved to continue the original September 12, 2011 trial date, which had been set before

---

[6]    HRCP Rule 14(a) (2000) provides in part that "[t]he plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert any defenses as provided in Rule 12 and any counterclaims and cross-claims as provided in Rule 13."

Espaniola appeared as a party.  The circuit court extended the trial week to April 16, 2012, and vacated all previous deadlines.

### b.    Kimura and Espaniola's motions for summary judgment

### i.    Kimura's motion for summary judgment

On September 29, 2011, Kimura moved for summary judgment, alleging Mobley failed to satisfy the tort threshold exception of HRS § 431:10C-306(b)(4) with respect to the 2008 accident ("MSJ").  Kimura cited Parker v. Nakaoka, 68 Haw. 557, 722 P.2d 1028 (1986), and Walsh v. Chan, 80 Hawai'i 188, 907 P.2d 774 (App. 1995), rev'd on other grounds, 80 Hawai'i 212, 908 P.2d 1198 (1995), discussed in Section IV.A below.  Kimura contended there was no evidence Mobley received PIP benefits to satisfy the tort threshold.  To her motion, Kimura attached the complaint, the third-party complaint, Mobley's amended answers to interrogatories, and a declaration from Ku'ulei Aina ("Aina Declaration"), Mobley's GEICO no-fault claims representative for the 2008 accident.  The Aina Declaration stated that "as of the date of this Declaration [September 26, 2011]," no PIP benefits had been paid on behalf of Mobley.

Mobley's amended answers to interrogatories, on the other hand, contained the following response:

> The following represents the total amount of medical
> expenses incurred by Plaintiff Gary Mobley as the result of

11

the motor vehicle accident on June 8, 2005 and in the motor vehicle accident on January 12, 2008:

| | |
|---|---:|
| Tripler Army Medical Center | $3,976.12 |
| Hawaii Diagnostic Fluoroscopy | $900.00 |
| Dr. Chai Health Center | $3,634.80 |
| Dr. Simon Kim, MD | $216.02 |
| Kaimuki Chiroptactic [sic] Center | $2,260.00 |
| First Physical & Functional Rehab | $2,490.72 |
| TOTAL: | $13,477.66 |

(Formatting altered.)  Kimura argued that under Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), HRCP Rule 56(c) (2000) mandated entry of summary judgment, after an adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[7]  As such, Kimura asserted Mobley could not prove he met the tort threshold or significant permanent loss of use exceptions to the abolition of tort liability, making summary judgment proper.

Kimura did not present any evidence regarding the significant permanent loss of use exception.

### ii. Espaniola's motion for partial summary judgment

On September 30, 2011, Espaniola moved for partial summary judgment also based on Mobley's alleged failure to satisfy the tort threshold exception under HRS § 431:10C-306(b)(4) ("MPSJ"). Espaniola also joined Kimura's MSJ.  In addition to asserting

---

[7]  We rejected this ruling of Celotex in Ralston.  129 Hawai'i at 62, 292 P.3d at 1292.

arguments similar to Kimura, Espaniola cited to Ho v. Leftwich, 88 Hawai'i 251, 965 P.2d 793 (1998), also discussed in Section IV.A below.

Like Kimura, Espaniola did not submit any evidence regarding the significant permanent loss of use exception.

### iii. Mobley's consolidated opposition memorandum

Mobley filed a consolidated memorandum opposing Kimura's MSJ and Espaniola's MPSJ.[8]  He contended he met the significant permanent loss of use exception of HRS § 431:10C-306(b)(2), alleging there was a genuine issue of material fact created by his inability to run or march with his students at work.  In support, Mobley attached an independent medical evaluation ("IME") report and letter written by Dr. Peter Diamond ("Dr. Diamond") (collectively, "Dr. Diamond's documents").  Dr. Diamond's documents were attached to a declaration in which Mobley's counsel attested as to their authenticity. Substantively, Dr. Diamond's letter stated, "[a]s regards Mr. Mobley's inability to run or march with the students, this would represent a significant, and likely permanent functional loss." Dr. Diamond's IME report also provided a chronology of Mobley's treatment by the providers listed in his amended answers to interrogatories.  In both the letter and the IME report, Dr.

---

[8]    Ching filed statements of no position as to both Kimura's and Espaniola's motions.

Diamond indicated his opinions were expressed to a reasonable degree of medical probability. Dr. Diamond also apportioned Mobley's injuries as 50% secondary to the 2005 accident and 50% to the 2008 accident.

Then, in a supplemental memorandum, Mobley asserted he also satisfied the tort threshold exception of HRS § 431:10C-306(b)(4). He stated he had filed a PIP claim with GEICO to pay for medical treatments for the 2008 accident, but that GEICO had denied all payments and that an arbitration decision was pending. He stated his medical service providers had billed GEICO for treatment provided in the 2008 accident. He also contended that

> [i]f the arbitrator orders GEICO to make payments, then several thousands of dollars in PIP payments will be made in Mr. Mobley's second accident PIP file. Ms. Aina's declaration . . . may mislead the Court as it gives the appearance that not only were no bills paid but also that no treatment services were provided to Mr. Mobley under the second accident PIP file. The Court should be aware that Mr. Mobley did in fact treat his injuries from the second accident and those bills were submitted to GEICO PIP claims for payment.

(Footnote omitted.) In support, he attached a letter dated October 17, 2011, from a GEICO staff attorney, which confirmed that an arbitration hearing had taken place on June 3, 2011, regarding Mobley's PIP payments from the 2008 accident but that the arbitration decision was still pending.

### iv.  Kimura and Espaniola's replies

In her reply, Kimura argued Mobley had not presented evidence to establish he had "incurred" PIP benefits of $5,000 or that GEICO had paid any PIP benefits.

Kimura also argued Parker, discussed in Section IV.A below, permits a court to rule on the significant permanent loss of use exception before trial, and that "pain" that precludes running or marching does not qualify under that exception.[9]  Kimura also attached Mobley's May 3, 2011 deposition to her reply.  In the deposition, Mobley testified at length regarding injuries from the 2008 accident, including neck and back pain, headaches, and numbness; that he was not running at all; that driving became harder because it hurt to bend his neck and head; and that it had become difficult to sit or perform physical activities with his students.  Kimura argued Mobley had been unable to specify whether he stopped running and marching before or after the 2008 accident.  Kimura argued that if Mobley's pain while running or marching qualified as a significant permanent loss of use, however, "practically any injury" would fall into that exception, which would defeat the purpose of Hawai'i's no-fault law.

---

[9]    Kimura also cited Licari v. Elliot, 441 N.E.2d 1088 (N.Y. 1982), a case Parker cited in its holding that trial judges are not precluded from determining whether a plaintiff met the threshold requirement, which is also discussed in Section IV.A below.

Kimura did not contest the admissibility of Dr. Diamond's documents attached to Mobley's consolidated opposition memorandum.

In his October 21, 2011 reply, Espaniola argued Dr. Diamond's documents were not admissible in evidence, as Mobley's counsel was not competent to lay a foundation as to Dr. Diamond's documents. Further, he argued that even if Dr. Diamond's documents were admissible, Mobley's injuries did not constitute the kind of "significant permanent loss of use of a part or function of the body" the Hawai'i legislature sought to exempt from tort liability.

As to the tort threshold exception, Espaniola argued no PIP benefits had been paid on behalf of Mobley for the 2008 accident. Espaniola argued Mobley stated "several thousands of dollars in PIP payments will be made," but failed to meet the specific requirement of a minimum of $5,000. Espaniola argued Mobley "clearly [knew] exactly how much he is alleging is due pursuant to the alleged injuries arising out of [the 2008 accident], but fails to state what that amount is."

### v.    Circuit court's oral ruling

On October 26, 2011, the circuit court[10] held a hearing on Kimura's MSJ and Espaniola's MPSJ. When the circuit court asked

---

[10]    The Honorable Rom A. Trader presided.

Mobley's counsel whether he was maintaining that Mobley qualified under the tort threshold exception, Mobley's counsel stated he was "conced[ing] that point."[11]

The circuit court questioned the admissibility of Dr. Diamond's documents.  The circuit court ruled that Dr. Diamond's documents were inadmissible through Mobley's counsel's declaration, citing to Pacific Concrete Federal Credit Union v. Kauanoe, 62 Haw. 334, 614 P.2d 936 (1980) (holding that facts set forth in summary judgment motion affidavits must be admissible in evidence), and Nakato v. Macharg, 89 Hawaiʻi 79, 969 P.2d 824 (App. 1998) (holding that exhibits attached to a summary judgment motion must be authenticated by and attached to an affidavit of a person through whom the exhibits could be admitted into evidence).

---

[11] Mobley brought to the circuit court's attention this court's October 4, 2011 opinion in Ahn v. Liberty Mutual Fire Ins. Co., 126 Hawaiʻi 1, 265 P.3d 470 (2011), which held that insureds are real parties in interest in actions against insurers for PIP benefits, overruling a prior decision holding otherwise except for an insurer's non-payment of PIP benefits required to meet the tort threshold, for which the insured qualified as a real party in interest.

Mobley raised Ahn to argue insurance companies were denying PIP benefits to their insureds, and that he was pursuing arbitration against GEICO for payment of PIP benefits for the 2008 accident, (see 1SP101000121 in the circuit court, in which on April 15, 2010, another circuit court judge granted Mobley's petition for appointment of an arbitrator and appointed Donald Fisher as arbitrator), stating that a favorable outcome would result in a "minimum of [$]3,500" in PIP benefits payable for the 2008 accident. However, Mobley's counsel then again orally conceded a failure to meet the tort threshold exception for the 2008 accident.

Mobley's counsel orally requested a HRCP Rule 56(f) continuance to have Dr. Diamond testify as to the opinions in his documents. The circuit court ruled, however, that Mobley did not meet the HRCP Rule 56(f) requirement that a party show why the evidence could not be presented by the time of the hearing. The circuit court orally granted Kimura's MSJ and Espaniola's MPSJ.

### vi. Motion for reconsideration, etc.

On January 18, 2012, Mobley filed a motion for reconsideration of the circuit court's October 26, 2011 oral orders, now attaching an affidavit from Dr. Diamond opining that due to Mobley's injuries and inability to march or run with his students, it appeared to a reasonable degree of medical probability that Mobley had suffered "a significant, and likely permanent functional loss" because of the injuries sustained in the 2008 accident. Mobley asserted the circuit court had applied erroneous summary judgment and evidentiary standards. In the alternative, Mobley requested a HRCP Rule 54(b) certification to allow an interlocutory appeal. Instead, the circuit court[12] filed orders granting Kimura's MSJ and denying Mobley's HRCP Rule 56(f) request on February 6, 2012, denying

---

[12] The Honorable Karen A. Nakasone presided, the case having been reassigned to her effective November 2, 2011.

18

Mobley's motion for reconsideration on February 14, 2012, and granting Espaniola's MPSJ On February 17, 2012.

After Mobley's October 2012 jury trial for his claims against Ching,[13] on March 6, 2013, the circuit court entered its judgment, and Mobley timely appealed to the ICA.[14]

### 2.    ICA proceedings[15]

On appeal, Mobley contended the circuit court erred when it granted Kimura's MSJ and Espaniola's MPSJ.

On August 15, 2019, the ICA filed its memorandum opinion. Mobley v. Ching, No. CAAP-12-0001090 (App. Aug. 15, 2019) (mem.).  In relevant part, the ICA concluded the circuit court

---

[13]    The April 2012 trial week was further continued to October 16, 2012, when Mobley proceeded to a jury trial on his claims against Ching, the remaining defendant.  Various fact and medical experts testified.  At the conclusion of Mobley's case, Ching moved to strike the testimonies of Mobley's medical experts on the grounds their testimonies had not been rendered to a reasonable degree of medical probability.  On October 19, 2012, the circuit court orally granted this motion.  Ching then immediately orally moved for a HRCP Rule 50 judgment as a matter of law ("JMOL").  Based on its striking of the medical experts' testimonies, the circuit court ruled there was no evidence regarding causation and insufficient foundation for Exhibit 47 regarding PIP payments that had previously been admitted in evidence, which alternatively meant that the tort threshold had not been met against Ching, which meant jurisdiction was lacking, and granted the motion for JMOL. On January 29, 2013, Mobley moved for a new trial, directed verdict on causation and/or reconsideration.  On April 23, 2013, the circuit court orally denied Mobley's motion.

[14]    In addition to the issues we currently address on certiorari, Mobley also appealed the circuit court's trial rulings and grant of JMOL in favor of Ching to the ICA.  See Ching, mem. op. at 1-2, n.1.  Generally, Mobley also argued error in the circuit court's rulings regarding the requirement of "reasonable medical probability" testimony and the grant of the motion for JMOL.  See id.

[15]    Only issues relevant to this certiorari proceeding are discussed.  See supra notes 11 and 14.

19

erred in granting Kimura's MSJ and Espaniola's MPSJ regarding the 2008 accident.  Ching, mem. op. at 8.

In reaching its conclusion, the ICA relied on this court's burden shifting paradigm in Ralston.  Ching, mem. op. at 9.  The ICA observed that in cases in which the non-moving party bears the burden of proof at trial, Ralston set forth a burden shifting paradigm in which the moving party may fulfill the initial burden on summary judgment of demonstrating there is no genuine issue of material fact by either

> "(1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the non-movant will be unable to carry [their] burden of proof at trial."  Ralston v. Yim, 129 Hawai'i 46, 56-57, 60, 292 P.3d 1276, 1286-87, 1290 (2013) (quoting and citing French v. Hawai'i Pizza Hut, Inc., 105 Hawai'i 462, 470, 472, 99 P.3d 1046, 1054, 1056 (2004)).  In regards to the latter method, the movant "must show not only that the non-movant has not placed proof in the record, but also that the movant will be unable to offer proof at trial."  Id. at 60-61, 292 P.3d at 1290-91 (emphasis omitted) (citing French, 105 Hawai'i at 472, 99 P.3d at 1056).  This consideration is contingent upon whether discovery has concluded or not.  See id. at 61, 292 P.3d at 1291 ("[I]n general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded." (emphasis added) (citing French, 105 Hawai'i at 472, 99 P.3d at 1056)).

Id. (second alteration in original).  The ICA noted discovery had not yet closed when the circuit court held its October 26, 2011 hearing on Kimura's MSJ and Espaniola's MPSJ.  Ching, mem. op. at 11 n.7.  Citing Rules of the Circuit Court of the State

20

of Hawai'i ("RCCH") Rule 12(r) (2007),[16] the ICA stated discovery would not have been cut off until February 16, 2012. Id.

As to the tort threshold exception of HRS § 431:10C-306(b)(4), the ICA concluded the circuit court erred in granting Espaniola's MPSJ as it was "premature" because "evidence had not established that Mobley could not demonstrate satisfaction of [HRS § 431:10C-306(b)(4)] at the time of trial." Ching, mem. op. at 8. Noting that although the circuit court's "only explanation" in concluding Mobley did not meet the tort threshold exception of HRS § 431:10C-306(b)(4) was that Mobley conceded he did not meet the threshold, the ICA also noted that, in moving for summary judgment, the only support Kimura and Espaniola offered was the Aina Declaration, which stated no PIP benefits had been paid to Mobley for the 2008 accident. Ching, mem. op. at 10. The ICA reasoned that "[a]lthough it may be correct that Mobley had not met [HRS § 431:10C-306(b)(4)] at the time of the hearing on the summary judgment motions, this does not establish that Mobley would be unable to prove that he could meet the threshold at the time of trial as discovery had not yet concluded when the Circuit Court granted summary judgment and partial summary judgment." Ching, mem. op. at 11. Therefore, citing Ralston, the ICA concluded Kimura and Espaniola did not

---

[16]  RCCH Rule 12(r) states: "Discovery shall be cut off 60 days before the assigned trial date."

21

satisfy their initial burden of production, and the circuit court erred in granting summary judgment in their favor because a genuine issue of fact existed as to whether Mobley could meet HRS § 431:10C-306(b)(4).  Id.

The ICA also concluded the circuit court erred in granting Kimura's MSJ and Espaniola's MPSJ based on Mobley's alleged failure to satisfy the significant permanent loss of use exception of HRS § 431:10C-306(b)(2).  Id.  As in its analysis of HRS § 431:10C-306(b)(4), the ICA concluded that although Mobley may not have met the "exception under HRS section 431:10C-306(b)(2) when the defendants moved for summary judgment, this does not establish that Mobley would have been unable to prove at trial that he met the threshold," citing Ralston.  Ching, mem. op. at 12.  Thus, the ICA concluded Kimura and Espaniola failed to carry their initial burden of production, and the circuit court erred in granting Kimura's MSJ and Espaniola's MPSJ.[17]  Id.

---

[17]    The ICA also concluded the circuit court erred in awarding JMOL at trial in the 2005 accident case.  See Ching, mem. op. at 12-23.  Specifically, the ICA concluded: (1) the circuit court did not abuse its discretion when it considered Ching's motion to strike Mobley's medical experts' testimonies; (2) the circuit court did not abuse its discretion when it determined Dr. Kientz did not testify to a "reasonable medical probability," but did abuse its discretion when it determined Dr. Kaan failed to express his opinion to that same standard and (3) the circuit court did not abuse its discretion in refusing to admit Dr. Kaan's report at trial on the basis that it was cumulative and was contrary to the circuit court's ruling on a prior motion in limine.  Id.  Because of its rulings, the ICA did not address Mobley's remaining points of error.  Ching, mem. op. at 12, 17, 23, 24.

(continued. . .)

The ICA therefore vacated the circuit court's judgment, reinstated Mobley's claims as to both the 2005 and 2008 accidents, and remanded the case to the circuit court for further proceedings consistent with its decision. Ching, mem. op. at 24. On August 29, 2019, the ICA filed its judgment on appeal.

### 3. Certiorari application

Espaniola presents two questions on certiorari, summarized as follows:

> 1. Did the ICA err in ruling the circuit court erred in granting Espaniola's motion for partial summary judgment based on Mobley's failure to satisfy the tort threshold?
>
> 2. Did the ICA err in ruling that the circuit court's grant of Espaniola's motion for partial summary judgment was premature because evidence had not established that, by the time of trial, Mobley would not be able to demonstrate satisfaction of the tort threshold or prove that his injury constitutes, in whole or in part, a significant permanent loss of use of a part or function of the body?

---

(. . .continued)
In discussing whether medical experts should state their conclusions to a "reasonable medical probability" or "reasonable medical certainty," the ICA cited several cases from other jurisdictions. Ching, mem. op. at 15 (citing Moses v. Drake, 109 A.3d 562, 558 (Del. 2015); Griffin v. Univ. of Pittsburgh Med. Ctr.-Braddock Hosp., 950 A.2d 996, 1000 (Pa. Super Ct. 2008). In Bachran v. Morishige, 52 Haw. 61, 469 P.2d 808 (1970), this court has also stated that "for the purpose of apportioning damages between two accidents, there is no necessity that an expert witness' testimony be limited or restricted by labels such as 'certainty,' 'reasonable medical certainty,' 'probability,' 'possibility,' etc." 52 Haw. at 67, 469 P.2d at 812.

## III.  Standards of review

### A.  Summary judgment

The circuit court's grant or denial of summary judgment is reviewed de novo.  Ralston, 129 Hawai'i at 55, 292 P.3d at 1285. Furthermore,

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

129 Hawai'i at 55-56, 292 P.3d at 1285-86 (alteration in original).  Ralston also provides:

> In sum, this court's case law indicates that a summary judgment movant may satisfy [their] initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the nonmovant will be unable to carry [their] burden of proof at trial.  Where the movant attempts to meet [their] burden through the latter means, [they] must show not only that the non-movant has not placed proof in the record, but also that the movant will be unable to offer proof at trial.  Accordingly, in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support [their] initial burden of production if discovery has not concluded.  ("[M]erely asserting that the non-moving party has not come forward with evidence to support its claims is not enough.").

129 Hawai'i at 60-61, 292 P.3d at 1290-91 (last alteration in original) (citations omitted).

### B.  Statutory interpretation

> Statutory interpretation is reviewed de novo by [the appellate] court.  When construing a statute, our foremost obligation is to ascertain and give effect to the intention

of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Moreover, it is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning.  Instead, our sole duty is to give effect to the statute's plain and obvious meaning.

Bank of New York Mellon v. R. Onaga, Inc., 140 Hawai'i 358, 365, 400 P.3d 559, 566 (2017) (alteration in original) (citation omitted).

## IV.  Discussion

### A.  Nature of the exceptions to the abolition of tort liability in HRS § 431:10C-306(b)

According to HRS § 431:10C-306, Mobley was required to satisfy one of the exceptions to the abolition of tort liability in HRS § 431:10C-306(b) quoted in Section II.A above.[18]

---

[18]     Before enacting HRS Chapter 294, the predecessor to HRS Chapter 431:10C, the Hawai'i legislative auditor had found, in relevant part, in a study of Hawai'i's motor vehicle liability insurance system, that: (1) relatively minor losses were being overcompensated, serious injuries were being undercompensated, and many automobile accident victims were not being compensated at all; (2) due to the high administrative costs and legal expenses underlying the adversary procedure, victims received only a fraction of the benefits; (3) there were long delays in receiving benefits due to the "machinery" of the fault-finding process, with an average claim being settled between nine and twelve months; (4) there was duplication among the liability, medical, wage loss, and property damage compensation systems; and (5) the costs of obtaining automobile liability insurance were high and continually rising.  Parker, 68 Haw. at 558-59, 722 P.2d at 1029-30 (citing Legislative Auditor, A Study of Hawaii's Motor Vehicle Insurance Program 5 (1972)).

The legislature enacted HRS Chapter 294 "to create a system of reparations for accidental harm and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents."  1973 Haw. Sess. Laws Act 203, § 1 at 381.  It stated

[e]lements of the old tort system have been retained for the serious cases involving death, disfigurement, and when medical-rehabilitative expenses reach a certain 'threshold' amount set by the insurance commissioner.  Any person whose

(continued. . .)

25

In <u>Ho</u>, construing a prior version of HRS § 431:10C-306, this court upheld the trial court's grant of the defendant's motion for directed verdict at the end of the plaintiff's case, holding:

> Because Ho neither presented (1) evidence that the medical expenses that she claimed in her motor vehicle tort lawsuit against Leftwich were paid, thereby triggering the statutory presumption that they were reasonable and necessary, nor (2) expert testimony establishing that the expenses were reasonable and necessary, we hold that she did not satisfy the minimum level of qualifying expenses necessary to maintain her action pursuant to the provisions of HRS § 431:10C-306.

---

(. . .continued)
> expenses exceed that threshold within the statute of limitations may sue for recovery.  The threshold is set at a level to ensure that approximately 90 per cent of such cases are resolved by the no-fault system.

1983 Haw. Sess. Laws Act 245, § 1 at 519.

   HRS § 294-6 was revised and recodified in HRS § 431:10C-306.  1987 Haw. Sess. Laws Act 347, § 2 at 148, 167.  Both HRS § 294-6 and HRS § 431:10C-306 sought to abolish tort liability for accidental harm arising from motor vehicle accidents, limiting tort liability to specific situations.  See 1973 Haw. Sess. Laws Act 203, § 1 at 381 ("The purpose of this chapter is to create a system of reparations for accidental harm and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents"); 1974 Haw. Sess. Laws Act 168, § 1 at 317 (repeating the purpose as stated in 1973); 1983 Haw. Sess. Laws Act 245, § 1 at 521 ("[T]he purpose of this Act is to expressly restate, reiterate, and clarify the intent of the legislature in enacting sections 294-6(a) and 294-36(b), Hawaii Revised Statutes, concerning the barring of suits by uninsured motorists for injuries sustained in motor vehicle accidents was originally, and is now: (1) To prevent a person who is ineligible for no-fault benefits from bringing a civil action if the medical rehabilitative limit is not reached within two years of the dates of the motor vehicle accident"); 1987 Haw. Sess. Laws Act 347, § 2 at 1 ("[T]he legislature hereby declares that the purpose of this chapter is to recodify, without substantive change, the insurance law in effect immediately prior to the effective date of this chapter."); 1987 Haw. Sess. Laws Act 347, § 2 at 148 ("The purpose of this article is to: (1) Create a system of reparations for accidental harm and loss arising from motor vehicle accidents; (2) Compensate these damages without regard to fault; and (3) Limit tort liability for these accidents."); 1997 Haw. Sess. Laws Act 251 §§ 43, 61, and 70 at 542, 551, 553 (repealing the floating medical-rehabilitative limit and fixing the tort threshold at $5,000).

88 Hawai'i at 260, 965 P.2d at 802.

In Parker, a post-jury trial case, this court, construing

HRS § 294-6, stated:

> Although the no-fault law is silent on this point, the scheme and objectives of the law suggest that meeting [a] threshold requirement is an essential condition and element of [a plaintiff's] claim.  [The plaintiff] is the one who has personal knowledge and information as to whether the threshold condition is met.  Therefore, it stands to reason that in order to achieve fairness and efficiency in implementing the objectives of the law, [the plaintiff] should have the burden of proving that the claim is one that has escaped the general abolition of tort liability decreed by HRS § 294-6.
>
>                     . . . .
>
> Allegations alone are not sufficient to meet the threshold requirements.  Appellee must carry the burden of proving that her injury meets or exceeds the threshold requirement in question.
>                     . . . .
>
> Hawaii's no-fault law does not give any guidance as to whether the judge, as a matter of law, should determine if the threshold requirement had been met, or whether the jury should determine that question.  We hold that whether Appellee met the threshold requirement is for the jury to determine inasmuch as the facts relating to Appellee's injury are in dispute and reasonable minds could differ on whether Appellee sustained an injury which consists, in whole or in part, in a significant permanent loss of use of a part or function of her body.
>
> This is not to say, however, that a trial judge is precluded from determining, as a matter of law, whether a plaintiff met the threshold requirement. When the evidence is so clear that reasonable minds could only come to one conclusion, it is not error for the trial judge to remove the threshold question from the jury and to determine that question as a matter of law.
>
> As to Appellant's proposed special verdict interrogatory number 5, we hold that the trial court erred in refusing to submit the proposed interrogatory to the jury in view of our holding that the threshold requirement is a necessary condition and element of Appellee's cause of action.  It is essential that the triers of fact make a finding that Appellee did in fact sustain an injury which consists, in whole or in part, in a significant permanent loss of use of a part or function of her body in order for

> Appellee to maintain her negligence tort claim against Appellant.

68 Haw. at 561-62, 722 P.2d at 1031 (emphases added) (internal citations and quotation marks omitted).

In Walsh, also construing a previous version of HRS § 431:10C-306(b), the ICA stated:

> The intent of the legislature in establishing the medical-rehabilitative limit in the no-fault law was to provide a jurisdictional requirement similar to the then $10,000 jurisdictional amount in diversity suits in the federal court: "In order to maintain an action, the claimant must show that the amount in controversy exceeds $5,000 (this amount being intended by your committee to be a jurisdictional requirement similar to the $10,000 jurisdictional requirement in federal diversity suits)." Hse.Stand.Comm.Rep. No. 187, 1973 House Journal, at 837.

80 Hawai'i at 192, 907 P.2d at 778. The ICA ruled that because the plaintiff had introduced in evidence medical-rehabilitative expenses well exceeding the $7,600 in "paid or accrued" medical-rehabilitative expenses in effect at the relevant time, the circuit court erred in entering judgment in favor of the defendant on the grounds the jury awarded less than that amount.[19] Id.

Finally, in Savini v. Univ. of Haw., 113 Hawai'i 459, 153 P.3d 1144 (2007), this court ruled that a plaintiff's claim, if brought under the tort threshold exception, does not accrue

---

[19] At that time, HRS § 431:10C-306(b)(2) provided that tort liability is not abolished where "[i]njury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 431:10C-308 for expenses provided in section 431:10C-103(10)(A) and (B); provided that the expenses paid shall be presumed to be reasonable and necessary in establishing the medical-rehabilitative limit[.]" As discussed by the ICA in its memorandum opinion in this case, this language differs from the current HRS § 431:10C-306(b)(4).

until the plaintiff meets that threshold, holding that "under Hawai'i law, a plaintiff who relies on the medical-expense threshold as opposed to a verbal threshold,[20] . . . has no claim at all . . . until the plaintiff has actually received the requisite amount of 'reasonably necessary' medical-rehabilitative treatment, <u>as manifested through bills received or paid</u>."  113 Hawai'i at 465, 153 P.3d at 1150 (emphasis added). The tort threshold exception of HRS § 431:10C-306(b) at the time provided:

> (b) Tort liability is not abolished as to the following persons . . . in the following circumstances:
>
> . . . .
>
> (2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in [HRS § ] 431:10C-308 for expenses provided in [HRS § ] 431:10C-103(10)(A) and (B)[ (concerning personal injury protection benefits) ]
>
> . . . .

113 Hawai'i at 461 n.2, 153 P.3d at 1146 n.2 (alterations in original).

Savini stated that "HRS § 431:10C-306 enables, indeed requires, would-be plaintiffs to 'wait and see' whether their expenses will be great enough to shift responsibility to another party."  113 Hawai'i at 466, 153 P.3d at 1151.  This court stated

---

[20]    Savini described the "verbal threshold" as HRS § 431:10C-306(b)(1), (2), and (3) (Supp. 2001), in which "sufficiently serious and permanent injuries (or death) are deemed to trigger tort liability without proof that the monetary threshold has been exceeded."  113 Hawai'i at 462 n.4, 153 P.3d at 1147 n.4.

this was necessary to effectuate the legislature's intent to abolish most motor vehicle tort lawsuits. 113 Hawai'i at 465, 153 P.3d at 1150. Savini also stated:

> In sum, construing HRS §§ 431:10C-306(b)(2) (1993) and 431:10C-315(b) so as to postpone "accrual" of claims based upon the medical-rehabilitative limit is necessary to effectuate the legislature's "aboli[tion]" of most motor vehicle tort lawsuits. For a plaintiff to sue based on the mere expectation that expenses might exceed the medical-rehabilitative threshold would be to pursue a claim that the legislature has expressly abolished. Moreover, the possibility of an eventually ripe claim does not justify a premature complaint: not even the best expert witness can ensure that such an inchoate claim will accrue before the plaintiff convalesces or dies due to causes unrelated to the alleged tort.
>
>      . . . .
>
> We recognize that today's holding might inconvenience future parties who would prefer to litigate early under circumstances where it is virtually certain that the plaintiff's injuries will give rise to medical expenses over $5,000.00 (the current threshold, see HRS § 431:10C-306(b)(4) (2005)), but will not do so until considerable time has elapsed. Such a scenario would be exceptional and capable of amelioration by the legislature.

113 Hawai'i at 466-67, 153 P.3d at 1151-52 (footnote omitted).

Under this backdrop, we address the issues on certiorari.

**B.     The ICA correctly ruled the circuit court erred in granting Espaniola's MPSJ, but it erred in applying the second Ralston prong to Espaniola's MPSJ to the extent it was based on Mobley's alleged failure to meet the tort threshold; rather, Espaniola failed to meet his burden under the first Ralston prong**

This section addresses Espaniola's assertions with respect to the tort threshold exception.

Pursuant to Ralston, quoted in Section III.A above, Espaniola had the option of either (1) putting forth evidence negating an element of Mobley's claim, or (2) demonstrating

30

Mobley could not carry his burden of proof at trial.  Espaniola argues he met his initial burden of production by satisfying the first Ralston prong, namely, by "presenting evidence negating an element of the non-movant's claim."

As discussed in Section IV.A, when a plaintiff's claim is based on the tort threshold exception, pursuant to Walsh and Savini, meeting the threshold is a jurisdictional requirement to the filing of a lawsuit.[21]  The ICA ruled, however, that Espaniola could not obtain summary judgment on the tort threshold exception even if he had met a movant's burden under the first Ralston prong.  Espaniola moved for summary judgment based on the first prong by introducing evidence that GEICO had not paid any PIP benefits for the 2008 accident.  According to language within the ICA's memorandum opinion, however, the circuit court was required to wait until trial to ascertain whether Mobley could meet the tort threshold exception.

---

[21]    HRS § 431:10C-315(b) (2005) governs the statute of limitations for lawsuits arising out of motor vehicle accidents, and accordingly extends the limitations period for filing a lawsuit as follows:

> (b) No suit arising out of a motor vehicle accident shall be brought in tort more than the later of:
>
> . . . .
>
> (2) Two years after the date of the last payment of motor vehicle insurance or optional additional benefits; or
> (3) Two years after the date of the last payment of workers' compensation or public assistance benefits arising from the motor vehicle accident.

Thus, the ICA appears to have conflated the first and second Ralston prongs with respect to its tort threshold exception analysis.  Because Espaniola only moved for summary judgment under the first Ralston prong, the circuit court and the ICA should not have considered the second Ralston prong to determine whether Mobley would be able to meet his burden at trial.[22]

With respect to the first Ralston prong upon which Espaniola's MPSJ was based, construing the statutory language of the tort threshold exception at that time, Savini ruled that a plaintiff's claim must have "accrued" under the tort threshold exception for a cause of action to exist allowing a lawsuit to be filed.  We turn now to address whether Espaniola actually met his burden under the first Ralston prong by presenting evidence negating an element of Mobley's claim.

To satisfy the first Ralston prong, Espaniola was required to present evidence negating that Mobley met the tort threshold. In this regard, however, Espaniola presented evidence that GEICO had not paid any PIP benefits for the 2008 accident.  In fact, Espaniola focuses on the payment of PIP benefits as an exception to tort liability.  Yet, as the ICA pointed out,

---

[22]    We do not preclude parties from moving for summary judgment under both the first and second Ralston prongs.  In that case, it would be appropriate for courts to consider both prongs.  Here, however, Espaniola only moved for summary judgment under the first prong, and so the circuit court and the ICA should not have considered the requirements of the second prong.

HRS § 431:10C-306(b) now states in subsection (b)(4)(A)(i) that PIP benefits incurred are to be included in the $5,000 tort threshold amount.

In any event, the record before the circuit court on summary judgment showed Mobley had incurred $13,477.66 in medical expenses for the June 2005 and January 2008 accidents. At the time of summary judgment, there was no evidence in the record apportioning that amount between the two accidents. Accordingly, viewing the evidence in the light most favorable to Mobley for purposes of the MPSJ, these PIP expenses should have been apportioned between the two accidents equally, with $6,738.83 attributed to the 2008 accident at issue. See Montalvo v. Lapez, 77 Hawai'i 282, 297, 884 P.2d 345, 360 (1994) (explaining that when a rough apportionment between two accidents is not possible, damages are apportioned equally). Because this amount was sufficient to meet the tort threshold exception, the Aina Declaration stating that no PIP benefits had been paid to-date for the 2008 accident was insufficient to show there was no genuine issue of material fact, and thus, summary judgment should not have been granted on this basis.

Therefore, although based on incorrect reasoning, the ICA reached the correct result by concluding the circuit court erred

by granting Espaniola's MPSJ as to HRS § 431:10C-306(b)(4)'s tort threshold exception.[23]

**C.     The ICA correctly ruled the circuit court's grant of Espaniola's MPSJ was premature on the grounds that Mobley would be unable to prove that his injury constitutes, in whole or in part, a significant permanent loss of use of a part or function of the body at the time of trial**

This section addresses the significant permanent loss of use exception.  It also addresses another argument raised by Espaniola with respect to the significant permanent loss of use exception: whether the injuries alleged by Mobley can qualify as a significant permanent loss of use of a part or function of the body.

With respect to the significant permanent loss of use exception to the abolition of tort liability, neither Espaniola nor Kimura, whose MSJ Espaniola joined, presented any evidence to "negate" this exception, as required by the first Ralston prong.  Thus, this part of Espaniola's MPSJ was necessarily based on the second Ralston prong.

---

[23]     Satisfaction of the tort threshold exception is a jurisdictional requirement to the filing of a lawsuit "similar to the [amount in controversy] jurisdictional requirement in federal diversity suits."  H. Stand. Comm. Rep. No. 187, in 1973 House Journal, at 837.  In a federal court, if the "amount in controversy threshold" of 28 U.S.C. 1332 is not met, the court lacks subject matter jurisdiction, and a complaint must be dismissed in its entirety. Arbaugh v. Y&H Corp., 546 U.S. 500, 514-15 (2006).  Likewise, HRCP Rule 12(h)(3) (2000) requires dismissal when subject matter jurisdiction is lacking.  See HRCP Rule 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismissal the action.").  To the extent the circuit court disposed of Mobley's complaint based on an alleged failure to meet the tort threshold, its order should have indicated a "dismissal" rather than a "partial summary judgment."

In Parker, this court stated a plaintiff has the burden of proving their injury meets or exceeds the "significant permanent loss of use of a part or function of the body."  68 Haw. at 561, 722 P.2d at 1031.  Parker also stated allegations alone are not sufficient and that the plaintiff bears the burden of proving an exception to the general abolition of tort liability.  Id. Parker was a post-trial case, however, and as noted in Section IV.A above, this court indicated that the question of whether a plaintiff has suffered a significant permanent loss of use of a part or function of the body is a jury question to be submitted to the jury in a special interrogatory.

In addition, in Ralston, this court stated that "in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded."  129 Hawai'i at 61, 292 P.3d at 1291.  As discovery had not yet concluded as to the significant permanent loss of use exception, the ICA correctly analyzed Espaniola's MPSJ under the second Ralston prong.

Thus, the ICA correctly ruled that, pursuant to Ralston, the circuit court erred in granting summary judgment as to this exception to the abolition of tort liability, as neither Espaniola nor Kimura had presented any evidence negating the exception and discovery had not yet concluded.

The circuit court alternatively ruled that even if Dr. Diamond's documents were considered, Mobley's injuries, in any event, did not constitute injuries that would qualify him for the significant permanent loss of use exception. Citing Licari and Falcone v. Branker, 342 A.2d 875 (N.J. Super. Ct. Law Div. 1975), Parker indicated that judges are not precluded from determining, as a matter of law, whether a plaintiff met the significant permanent loss of use exception. 68 Haw. at 562, 722 P.2d at 1031. As the circuit court alternatively ruled on this basis and Espaniola continues to argue the issue, we briefly address it.

In addition to Licari and Falcone, Parker cited to Murray v. Walter, 269 N.W.2d 47 (Minn. 1978), and Fleet Transport Co. v. Holland, 304 S.E.2d 76 (Ga. Ct. App. 1983), regarding whether an injury can qualify as a significant permanent loss of use of a part or function of the body. 68 Haw. at 562, 722 P.2d at 1031.

The statutory language of the exceptions discussed in these cases differ from the language of HRS § 431:10C-306(b)(2), which provides an exception to the abolition of tort liability for an "[i]njury [] which consists, in whole or in part, in a

significant permanent loss of use of a part or function of the

body[.]"[24]

_____

[24]   In <u>Licari</u>, the New York Court of Appeals upheld a trial court ruling that the personal injuries alleged did not constitute a "serious injury" within the meaning of New York's no-fault law.  441 N.E.2d at 1092-93.  New York's no-fault law required a "serious injury" for there to be an exception to the abolition of tort liability.  441 N.E.2d at 1090.  "Serious injury" was defined as

> "a personal injury which results in death; dismemberment; significant disfigurement; a fracture; <u>permanent loss of use of a body organ, member, function or system</u>; permanent consequential limitation of use of a body organ or member; <u>significant limitation of use of a body function or system</u>; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

<u>Id.</u> (emphases added) (quoting N.Y. Ins. Law, § 671, subd. 4).  The New York Court of Appeals, examining the legislative intent of the no-fault law, held that the question of whether a plaintiff suffered a serious injury is not always a fact question for the jury.  441 N.E.2d at 1091.  It noted that even if the plaintiff's contention that he suffered a "significant limitation of use of a body function or system" was taken in a light most favorable to him, the plaintiff did not offer any evidence "as to the <u>extent</u> of the limitation of movement."  441 N.E.2d at 1092.

In <u>Falcone</u>, the New Jersey Superior Court held the plaintiff's argument that the small scars on his nose and knee that resulted from a three-car automobile collision were not exempt from New Jersey's no-fault law as a "permanent significant disfigurement."  342 A.2d at 882.  The defendant "move[d] for summary judgment dismissing the [plaintiff's] complaint for failure to state a claim upon which relief could be granted"; the New Jersey Superior Court granted the motion in favor of the defendant.  342 A.2d at 877, 884.  It found the associated words of New Jersey's no-fault law all connoted injuries of a substantial nature; thus, it found the term "significant" within the "permanent significant disfigurement" exemption to be synonymous with "serious" as used in workers' compensation cases dealing with serious disfigurement.  342 A.2d at 880.

In <u>Murray</u>, the Minnesota Supreme Court held a party satisfied the "permanent injury" threshold of Minnesota's no-fault law by pleading and proving facts that he suffered "permanent injuries, including but not limited to permanent injury to his neck and back."  269 N.W.2d at 50.  It also held that party "met, by means of Dr. Johnson's testimony, [its] burden of proving 'permanent injury.'"  <u>Id.</u>  It also stated, however, that because the opposing party failed to argue satisfaction of the "permanent injury" threshold, it resulted in a waiver of that issue.  <u>Id.</u>

(continued. . .)

Although the circuit court alternatively ruled that even if Dr. Diamond's documents were considered, Mobley did not suffer a "significant permanent loss of use of a part or function of the body" as a matter of law, even without Dr. Diamond's documents, based on Mobley's deposition, the evidence was not so clear that reasonable minds could only come to one conclusion.  At minimum, whether Mobley's inability to run or march with the students presents a genuine issue of material fact on whether Mobley's injuries qualify for the HRS § 431:10C-306(b)(2) exception to the abolition of tort liability arising from motor vehicle accidents.  Reasonable minds could differ on whether an inability to "march" or "run" is a "significant permanent loss of use of a [] function of the body," if proximately caused by the 2008 accident.[25]  Thus, the circuit court also erred in granting Espaniola's MPSJ on this alternative basis.[26]

_____

(. . .continued)

    Finally, in Holland, the Georgia Court of Appeals held that the jury was properly instructed on whether a plaintiff, who alleged a "whiplash" type of injury but also had preexisting neck and back problems, had sustained a "serious injury" under Georgia's no-fault law.  304 S.E.2d at 77.

[25]    The issue was whether the injury alleged could constitute a "significant permanent loss of use of a part of function of the body," not whether the injuries alleged were proximately caused by the 2008 accident.

[26]    The circuit court also abused its discretion by not granting Mobley's request for a HRCP Rule 56(f) continuance to present and then consider admissible evidence from Dr. Diamond that Mobley's inability to march and run was a "significant permanent loss of use of a part or function of his body."

    HRCP Rule 56(f) provides:

(continued. . .)

38

(. . .continued)

> **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated presented by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In Ralston, we stated, "HRCP Rule 56(f) is the proper procedure to request and obtain additional time to respond to a motion for summary judgment that is filed prior to the discovery deadline." 129 Hawai'i at 62, 292 P.3d at 1292. We stated that, "Had Dr. Yim provided a proper expert affidavit in support of his motion, Ralston [,the non-movant plaintiff,] would have been required to submit his expert's affidavit or request a HRCP Rule 56(f) continuance to allow more time to produce an admissible affidavit." Id. In Ralston, we also rejected the ruling in Celotex that summary judgment may be appropriate before a discovery deadline if the non-movant had "adequate time to conduct discovery and to identify experts." 129 Hawai'i at 62, 292 P.3d at 1292. In rejecting that ruling, we stated such an approach would be inconsistent with French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 99 P.3d 1046 (2004), as "the clear import of French is that summary judgment should not be granted when there is still time for the non-movant to develop evidence for use at trial, unless there is a basis for concluding (as was the case in Celotex) that such an effort would be futile." 129 Hawai'i at 63, 292 P.3d at 1293. Further, we stated HRCP Rule 56(f) provides non-movants with protection against a premature grant of a motion for summary judgment. Id. We also noted it was generally recognized that:

> The purpose of subdivision (f) is to provide an additional safeguard against an improvident or premature grant of summary judgment and the rule generally has been applied to achieve that objective. Consistent with this purpose, courts have stated that technical rulings have no place under the subdivision and that it should be applied with a spirit of liberality.

Id. (emphasis added) (citing 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure Civil 3d § 2740, at 402 (1998)).

As noted, Mobley did not "amend over" against Espaniola, who Kimura impleaded as a third-party defendant regarding the 2008 accident. Kimura, the only party against whom Mobley had a direct claim with respect to the 2008 accident, did not object to the admissibility of Dr. Diamond's documents. Although HRCP Rule 14 entitled Espaniola to assert defenses available to Kimura against Mobley ("The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim."), especially because Kimura did not raise the admissibility of Dr. Diamond's documents as an issue, the circuit court abused its discretion by denying Mobley's request for a HRCP Rule 56(f) continuance. Also, although Mobley proposed to bring Dr. Diamond to testify, Dr. Diamond would not have had to testify; all that was required was a

(continued. . .)

39

## V.    Conclusion

Based on the reasons above, we affirm the ICA's August 29, 2019 judgment on appeal, which vacated the circuit court's March 6, 2013 judgment and remanded the case for reinstatement of Mobley's claims related to both the 2005 and 2008 accidents, but as modified by the analysis in this opinion.

Michael H. Tsuchida,
for petitioner

Walter J. Rodby and
John Y.U. Choi,
for respondent/
plaintiff-appellant

Randall Y.S. Chung,
Rayni M. Nakamura, and
Michael S. Hult,
for respondent/
defendant-appellee

Jonathan L. Ortiz and
Wade J. Katano,
for respondent/defendant/
third-party plaintiff-appellee

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



---

(. . .continued)
declaration or affidavit from Dr. Diamond to cure the foundational deficiency, which Mobley's counsel was able to obtain after the hearing and presented in his motion for reconsideration. As indicated above, Mobley was able to later secure an admissible affidavit from Dr. Diamond creating a genuine issue of material fact as to the significant permanent loss of use exception. But even if Mobley had amended over against Espaniola, the circuit court's refusal of the Rule 56(f) continuance request constituted an abuse of discretion.